**KENNEDY SHIP & REPAIR, L.P., Appellant,**

v.

**Dranson Charlie PHAM, Appellee.**

**No. 14–05–00363–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 5, 2006.

Rehearing Overruled Nov. 2, 2006.

George W. Vie, III, Galveston, Christopher Tran, Chau Minh Nguyen, Houston, for appellant.

Stephen A. Mendel, Houston, for appellee.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Kennedy Ship & Repair, L.P. ("Kennedy Ship"), appeals the judgment entered in favor of appellee, Dranson Charlie Pham ("Pham"), on his breach of contract claim. We affirm.

### I. BACKGROUND

On January 4, 2001, Kennedy Ship and Pham entered into a contract under which Kennedy Ship agreed to build a commercial shrimp trawler for Pham for a purchase price of $808,000. The contract provided for a delivery date of June 2001, in time for shrimping season. In January 2001, Pham made a $50,000 down payment on the shrimp trawler. The contract provided that the first payment of $50,000—after the down payment—was due "when hull erection [is] completed," the second payment of $50,000 was due one month from the date of the first payment, the third payment of $50,000 was due two months from the date of the first payment, and the fourth payment of $608,000 was due "upon completion from bank loan."

On April 12, 2001, Kennedy Ship wrote Pham that the hull had been erected and Pham was $100,000 overdue on his contract. On April 18, 2001, a $50,000 payment was made to Kennedy Ship on behalf of Pham. On July 23, 2001, Kennedy Ship wrote Pham again that he was $100,000 overdue on his contract and his "hull position has been lost unless payment arrangements have been made and agreed upon in the next fifteen days." On August 21, 2001, Kennedy Ship informed Pham that it was "proceeding with the construction of the hull for a new purchaser." In September 2001, Pham tried to make a payment on the shrimp trawler, but was told by Chris Kennedy, the general partner of Kennedy Ship, that the hull had been transferred to another purchaser.

Pham sued Kennedy Ship for breach of contract and Kennedy Ship counterclaimed against Pham for breach of contract.[1] The jury found Kennedy Ship had failed to comply with its agreement to build a commercial shrimp trawler for Pham, and Pham had failed to comply with his agreement to purchase a commercial shrimp trawler from Kennedy Ship. The jury found Pham's failure to comply was excused by Kennedy Ship's previous failure to comply with a material obligation of the same agreement, but Kennedy Ship's failure to comply was not excused. The jury awarded Pham $100,000, which was the amount Pham had paid to Kennedy Ship, on his breach of contract claim.

On appeal, Kennedy Ship claims (1) the evidence is legally and factually insufficient to support the jury's finding that it breached its agreement with Pham, (2) the jury's finding that it's performance of the contract was not excused from performance is against the great weight and preponderance of the evidence, (3) the evidence is factually insufficient to support the jury's finding that Pham's performance of the contract was excused, and (4) the trial court erred in not including an instruction on material breach in the jury charge.

## II. KENNEDY SHIP'S BREACH

### A. Legal Sufficiency

■ In its first issue, Kennedy ship challenges the legal sufficiency of the evidence to support the jury's finding that it breached the agreement to build a commercial shrimp trawler for Pham. When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference

that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). We credit favorable evidence if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable fair-minded people to reach the verdict under review. *Id.*

■ Because the appellate court is not the fact finder, it may not substitute its own judgment for that of the trier of fact, even if a different answer could be reached on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Grey Wolf Drilling Co. v. Boutte*, 154 S.W.3d 725, 733–34 (Tex.App.-Houston [14th Dist.] 2004, pet. dism'd by agr.). The amount of evidence necessary to affirm the judgment is far less than necessary to reverse a judgment. *Bracewell v. Bracewell*, 20 S.W.3d 14, 23 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

### 1. American Bureau of Shipping Standards

■ Kennedy Ship contends the evidence is not legally to support a finding that it breached the contract because the shrimp trawler was not classed and certified by the American Bureau of Shipping ("ABS"). The American Bureau of Shipping ("ABS") is a classification society whose purpose is to promote certain standards within the shipping industry.

The contract between Kennedy Ship and Pham provided:

*Classifications and Certificates:*

Admeasurement under 200 gross tons. Built to ABS standards.

---

1. Pham also brought claims for violations of the Texas Deceptive Trade Practices Act ("DTPA"), promissory estoppel, fraud, and violations of civil rights under 42 U.S.C. § 1981. Pham also sued Chris Kennedy, individually, and another company related to Kennedy Ship. Kennedy also counterclaimed against Pham for fraudulent inducement.

Although neither party pleaded ambiguity, the trial court determined the above quoted contract term was ambiguous and, accordingly, instructed the jury:

It is your duty to interpret the following language of the agreement: "Classifications and Certificates: Built to ABS standards[.]"

You must decide its meaning by determining the intent of the parties at the time of the agreement. Consider all the facts and circumstances surrounding the making of the agreement, the interpretation placed on the agreement by the parties, and the conduct of the parties and any trade customs.[2]

Kennedy Ship argues that the plain language of the contract states it would build the boat to ABS standards, not that the boat would be classified or certified by the ABS as argued by Pham. Even under Kennedy Ship's interpretation that it was not obligated to have the vessel ABS classed and certified, but only that it would build it to ABS standards, we conclude the evidence is legally sufficient to support a jury finding that Kennedy Ship did not build the shrimp trawler to ABS standards.

Ken Tamura, the manager of the Rules and Standards Department at the ABS, described the process for obtaining ABS classification and certification for a vessel. First, an application of the classification request must be submitted to the ABS, which reviews it to make sure it is appropriate for classification and the ABS issues the verification. The design for the vessel is then submitted to the ABS for its review to make sure it is in compliance with ABS rules and standards. After the ABS approves the design and the vessel is under construction, an ABS surveyor is stationed periodically at the construction site to verify that the construction complies with the approved design and that materials used in the construction meet ABS standards. After the construction has been completed, the ABS surveyor issues a certificate stating the vessel complies with ABS standards. Tamura stated that a builder can use ABS standards without having the vessel actually classified by the ABS, but the ABS will not have any involvement.

Chris Kennedy testified he told the naval architecture firm, DNC, located in Mobile, Alabama, that although the vessel would not be ABS classed, he still wanted the vessel designed to meet ABS standards. Dean Hartmann, the naval architect who designed this shrimp trawler, testified the boat was designed to comply with U.S. Coast Guard safety regulations, but admitted Coast Guard rules are not identical to the ABS rules and regulations for the construction of vessels, and a boat built to Coast Guard specifications or requirements may not necessarily meet ABS requirements.

Hartmann stated that he used ABS rules for building and classing steel vessels under 90 meters, but not every section in the rules would apply to this vessel. Hartmann testified the boat's longitudinal strength, shell plating, deck plating, bottom structure, side frames, keel, beams, deck girders, deck traverses, pillars, deep tanks, stern frames, shaft struts, box rails, dream ports, port lights, window ventilators, and tank vents meet ABS standards.

---

2. The trial court may conclude a contract is ambiguous, even in the absence of such pleading by either party, and submit the ambiguity to the jury if it was tried by consent of the parties. *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993) (citing Tex.R. Civ. P. 67). Pham objected to the trial court's determination that the language with regard to ABS standards is ambiguous and the inclusion of the instruction in the jury charge. The trial court overruled Pham's objection. Neither Kennedy Ship nor Pham complain on appeal that the trial court erred in finding the contract provision regarding ABS standards to be ambiguous and submitting the ambiguity to the jury.

Hartmann said the hull structure was intended to meet ABS standards, but he did not claim other aspects of the boat complied with ABS standards. For example, Hartmann could not testify that certain systems, i.e., the electrical system, piping, machinery, outriggers, sewer pipes, refrigeration, and hydraulics met ABS standards. In fact, many of the hull accouterments were not included in Hartmann's plans, but, instead, were yard-designed.

Sonny Bosworth, who worked for Kennedy Ship as a supervisor or "troubleshooter," was involved in the construction of the first two shrimp trawlers Kennedy Ship had under contract, but not the one for Pham. However, according to Hartmann, all the shrimp trawlers were based on the same design and should have been identical. Thus, Hartman said he would expect a design defect to carry through the entire line of vessels. Bosworth testified there were a number of problems with the design of the shrimp trawler. For example, Bosworth explained there was too much water and fuel at the bow with no buoyancy, i.e., an air tank at the bow to carry the weight of the boat. According to Bosworth, this had to be modified because if the front tank had been filled with fuel and water, the boat would not have been able to carry the weight.

Hartmann disagreed with Bosworth with regard to buoyancy. Hartmann explained there was no buoyancy chamber in the original design because there is no such thing as a buoyancy chamber. Hartmann testified the vessel did well in the stability test. However, when Hartmann conducted the stability test on one of the boats based on his design, he was not aware that a "buoyancy chamber had been cut into the design" and the vessel had been modified in accordance with Bosworth's recommendation.

Bosworth also testified there was a problem with the motor bed. The motor bed is the framework on which the engine is placed. The engine did not fit in the motor bed properly and Bosworth had to cut the motor bed out in the back and modify the motor bed so that the motor could be lined up properly with the propeller shaft. Hartmann disagreed with Bosworth that there was any problem with the motor bed or that the engine would not fit.

Hartmann's design specified "grade A 36" steel. However, not all grade A 36 steel is approved by the ABS. The ABS inspects, and stamps its approval on, all steel used in ABS classed vessels. Hartmann did not know if any of the steel used in the construction of Kennedy Ship's boats was actually approved by ABS and the ABS did not survey the construction of these vessels.

Bosworth testified not all of the steel was ABS certified because it did not have the ABS markings. On the other hand, Kennedy testified all the steel on the vessel was ABS certified. Kennedy stated that the steel was stamped as certified by the ABS, but explained why the certification stamps would not be visible:

> You wouldn't be able to see it at this time. There are stamps, but after it's painted you wouldn't see it. And we also receive paperwork from the steel company. In this case we purchased all the plates from O'Neal, and they would supply us ABS A36 sheets that would guarantee that it was ABS plate.... That's all the plate that makes the entire vessel: Around the hull, deckhouse, pilothouse, main deck, interior bulkheads, everything.

Hartmann testified the ABS has very specific rules and regulations with respect to the types of welds used in the construction of vessels and its inspection process regarding welds. Hartmann explained

that his design did not provide any specifications comparable to ABS specifications regarding welds and he has no way of knowing whether the welds on the vessel are compliant with ABS standards.

Finally, a survey of one of the shrimp trawlers built by Kennedy Ship noted some problems, including the vessel's inability to carry a "load line," the incorrect mounting of the generators that could potentially damage the main engines' bearings, and the aft engine room bulkhead's not being watertight:

> Vessel's builder reports that the vessel hull is built to American Bureau of Shipping standards although the machinery is not classed nor will she carry a load line.

> * * *

> Vessel's owner is to be made aware that the mounting of the generators to the same foundation as the main engines will, thru vibration when the main engines are not running potentially damage the main engines' bearings with resultant reduction in operating hours between overhauls of the main engines. This common mounting of the generators and main engines on the same foundation is not to best marine practice and should have been avoided.

> * * *

> At time of inspection, vessel's aft engine room bulkhead was noted not watertight.

The fact that Dean Hartmann, who designed the shrimp trawler, could not state that the entire vessel would meet ABS standards, the fact that Sonny Bosworth encountered a number of serious design flaws in the construction of the shrimp trawler, and the fact that a survey conducted on the shrimp trawler noted problems are legally sufficient to support a finding that Kennedy Ship did not construct the shrimp trawler in accordance with ABS standards and, thus, breached its contract with Pham.

### 2. Timeliness of the Delivery of the Boat

■ Kennedy Ship contends the evidence is legally insufficient to support a finding that it breached the contract by failing to timely deliver the boat to Pham. Kennedy Ship argues that while the contract states delivery was for June 2001, Kennedy Ship argues the contract did not make time of the essence.

■ Ordinarily, time is not of the essence. *Municipal Admin. Servs., Inc. v. City of Beaumont*, 969 S.W.2d 31, 36 (Tex. App.-Texarkana 1998, no pet.); *Superior Signs, Inc. v. American Sign Servs., Inc.*, 507 S.W.2d 912, 915 (Tex.Civ.App.-Dallas 1974, no writ). Also, a date stated for performance does not mean time is of the essence. *Cadle Co. v. Castle*, 913 S.W.2d 627, 637 (Tex.App.-Dallas 1995, writ denied); *Shaw v. Kennedy, Ltd.*, 879 S.W.2d 240, 246 (Tex.App.-Amarillo 1994, no writ). Instead, the contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence. *Municipal Admin. Servs., Inc.*, 969 S.W.2d at 36; *Siderius, Inc. v. Wallace Co.*, 583 S.W.2d 852, 863 (Tex.Civ.App.-Tyler 1979, no writ). Unless the contract expressly makes time of the essence, the issue is a fact question for the jury. *Siderius, Inc.*, 583 S.W.2d at 863.

We agree with Kennedy Ship that while the contract stated a delivery date of June 2001, the contract did not express that time was of the essence. However, in light of the nature or purpose of the contract, i.e., building a vessel to be used for shrimping, and the surrounding circum-

stances, we find time was of the essence. Pham testified the June 2001 delivery date was "[v]ery important.... Because that is right in the season and then I can make money to pay back my debts." Likewise, Chris Kennedy knew the purchasers of shrimp trawlers wanted the boats for shrimp season, which begins in July, and the shrimpers needed income from shrimping in order to make payments on the boats. Chris explained:

> All of the fishermen ask for delivery dates prior to fishing season ... There was [sic] requests made by fisherman to have the vessel before the fishing season so that they wouldn't have to make payments during the winter, so that was a theme throughout the building of these vessels is that all the fishermen wanted to have the vessel just prior to [the] opening of the season so they could make that season. The payments for these vessels usually ran 14 to $16,000 a month and, therefore, they did not want to make those payments when the boat wasn't making money.

Kennedy also argues time was not of the essence because, after the June 2001 deadline was not met, Pham elected to affirm the agreement and continue to seek performance by requesting Kennedy Ship build the boat and deliver it by December 2001.

■ A time of the essence provision may be waived. *17090 Parkway, Ltd. v. McDavid,* 80 S.W.3d 252, 255 (Tex.App.-Dallas 2002, pet. denied); *Intermedics, Inc. v. Grady,* 683 S.W.2d 842, 846 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd n.re.). The acceptance of late performance may indicate that it was not intended that time be of the essence. *Superior Signs, Inc.,* 507 S.W.2d at 915. "A waiver of time of performance of a contract will result from any act that *induces* the opposite party to believe that exact performance within the time designated in the contract

will not be insisted upon." *Laredo Hides Co. v. H & H Meat Prods. Co.,* 513 S.W.2d 210, 218 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.) (emphasis added).

After receiving the July 23, 2001 letter, Pham saw Chris Kennedy. Pham told Kennedy he would give him more money when the hull was finished and had been turned. Pham still wanted the vessel and, in September, when Pham saw that the hull had been turned, he approached Chris Kennedy, offering a $50,000 payment, but, instead, was told by Chris that "you have lost your boat already."

Chris testified that he transferred Pham's hull to another customer, Christopher Tran, in August 2001. However, there is evidence to support a finding that Kennedy Ship had already transferred the hull to Tran in May 2001. Tran and Kennedy Ship entered a contract on February 19, 2001. According to Chris, Tran paid $10,000 to hold a hull position because there were already contracts for the construction of five other boats ahead of Tran and there was no room at the yard to start a boat for Tran. Chris explained that under Tran's contract, a $50,000 down payment would be due when Kennedy Ship started on a hull for Tran or transferred a hull to Tran from another buyer. On May 1, 2001, Tran paid Kennedy Ship $50,000 via wire transfer. When Tran made his $50,000 payment on May 1, 2001, Kennedy Ship had three hulls under construction—Pham's and two others. Thus, when Tran wired the $50,000 payment for a fourth hull, there were only three hulls under construction.

Chris denied that Kennedy Ship was taking money from both Pham and Tran for the same vessel, but admitted that Kennedy Ship was taking money from four fishermen when only three hulls were under construction. Chris stated that he would only accept $50,000 from a fisher-

man if Kennedy Ship were going to start building a boat for that fisherman, but he could not offer any explanation for taking a $50,000 payment from Tran:

Q. How do you explain to the jury that you are accepting money from four different fisherman when you only have three hulls under construction?

A. Because Christopher [Tran] was taking over Charlie's [Pham] position.

Q. Okay. Then that means that you were transferring Charlie's [Pham] boat to Christopher [Tran] in May, not in August as you testified earlier; right?

A. I don't know. I mean, I don't know about—I didn't personally request that $50,000 be wired. There was other negotiations that went on there. There was a special agreement made with Christopher [Tran] that he signed.

\* \* \*

Q. Then do you have any other explanation for why you are accepting $50,000 from Christopher Tran at the same time you are accepting money from Charlie Tran [sic] [Pham], Joe Nguyen, and Chau Nguyen?

A. No.

\* \* \*

Q. Who's [sic] hull was Christopher Tran taking when he wired that $50,000 to you?

A. Charlie's [Pham].

Roxanne Kennedy testified that the purpose of the May 2001 $50,000 payment from Tran was to secure Tran's position on Pham's hull ahead of other contracts that could potentially take over Pham's hull in the event that Pham did not come through with his payments. Tran, however, testified that his $50,000 payment in May 2001, was not an additional deposit.

Therefore, in light of evidence that Kennedy Ship had already transferred the hull under Pham's contract to another purchaser in May 2001, Pham could not have induced Chris Kennedy, in September 2001, into believing that "exact performance within the time designated in the contract w[ould] not be insisted upon." *Laredo Hides Co.*, 513 S.W.2d at 218. The evidence is legally sufficient to support a finding that the parties intended that time be of the essence and that Kennedy Ship breached the contract by failing to timely deliver the boat to Pham in June 2001. Kennedy Ship's first issue is overruled.

### B. Factual Sufficiency of the Evidence

In its second issue, Kennedy Ship claims the evidence is factually insufficient to support a finding that it breached the contract with Pham based on its premature demand for payment from Pham and its failure to build the boat to ABS standards. When conducting a factual sufficiency review, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding, and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

#### 1. Premature Demand for Payment

Kennedy Ship contends the evidence is factually insufficient to support a jury finding that it breached the contract by prematurely demanding payments from Pham. The contract provides the first $50,000 payment (after the down payment) was "due when hull erection [is] completed." The trial court did not expressly hold the term "hull erection completed" was ambiguous, but admitted parole evidence without objection regarding the meaning of the term. The trial court may conclude a contract is ambiguous, even in the absence of such pleading by either party, and

submit the ambiguity to the jury if it was tried by consent of the parties. *Sage Street Assocs.*, 863 S.W.2d at 445 (citing TEX.R. CIV. P. 67).

■ Whether a contract is ambiguous is a question of law for the court. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). We review the trial court's legal conclusions de novo. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999). We determine whether the contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex.2003).

■ If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005) (per curiam) (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)). A contract, however, is ambiguous when it is susceptible to more than one reasonable interpretation. *Frost Nat'l Bank v. L & F. Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex.2005) (per curiam).

■ Our primary concern when interpreting a contract is to ascertain and give effect to the intent of the parties as it is expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 49 Tex. Sup.Ct. J. 744, 2006 WL 1651684, at *2 (Tex. June 16, 2006). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005). Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Id.*

■ "Lack of clarity does not create an ambiguity, and '[n]ot every difference in the interpretation of a contract . . . amounts to an ambiguity.'" *Universal Health Servs., Inc.,* 121 S.W.3d at 746 (quoting *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994)). We may consider the parties' interpretations of the contract through extrinsic or parol evidence only after we have first determined that the contract is ambiguous. *Friendswood Dev. Co. v. McDade & Co.,* 926 S.W.2d 280, 283 (Tex.1996) (per curiam). Parol evidence is not admissible for the purpose of creating an ambiguity. *National Union Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995) (per curiam).

Kennedy Ship argues the terms "hull completed" and "hull erection completed" do not have the same meaning and to conclude otherwise would render the word "erection" superfluous, void, and insignificant. We disagree. The plain meaning of the term "erection" is "a building or structure,"[3] or "the act or process of erecting something: CONSTRUCTION."[4] Thus, we conclude the phrase "hull erection completed" means, in its common usage, to have completed building the hull.[5]

---

3. OXFORD AMERICAN DICTIONARY AND THESAURUS 182 (2003).

4. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 423 (11th ed.2003).

5. Even when used as a naval term, erection means "[t]he process of hoisting into place and joining the various part's of a ship's hull, machinery, etc." Nomenclature of Naval Vessels, Naval Historical Center, http:// www. history.navy.mil/books/nnv/dh.htm# E (last visited September 19, 2006).

■ Kennedy Ship argues the conduct of the parties is the best indicator of the construction they placed on contract. Kennedy Ship argues the first payment for Pham was made on April 18, after delivery of the April 12 letter. Kennedy Ship argues there was no evidence before this suit was filed that Pham had taken the position that "hull erection completed" had not occurred. Contrary to Kennedy Ship's assertion, "[t]he objective intent as expressed in the agreement controls the construction of an unambiguous contract, not a party's after-the-fact conduct." *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex.2006) (per curiam).

Even if the term "hull erection completed" could be interpreted to mean the completion of only the skeleton or ribs of the hull, without the attachment of plates, we still find the evidence is factually sufficient to support a finding that Kennedy Ship breached the contract by demanding the first and second payments before they were due. On April 12, 2001, Kennedy Ship wrote to Pham, informing him that he was "$100,000 over due" on his contract and "the hull is in full erection." The first $50,000 payment was due when "hull erected [is] completed" and the second $50,000 payment was due one month from the date of the first payment. Therefore, if Pham were over due on his contract by $100,000, i.e., the first and second payments, then "hull erection completed" would have been in early to mid-March 2001.

Chris Kennedy testified that by writing the letter on April 12, Kennedy Ship was taking the position that 30 days before that, i.e., March 12, the hull erection was complete on Pham's boat. However, Chris testified the shipyard was still working on two other hulls in March 2001, and there was no room to start Pham's boat until those first two hulls had been turned. The first two hulls were turned on March 18, 2001. When Chris was questioned about pictures from Kennedy's Ship's website showing the flooding of the docks and the turning of the first two hulls on March 18, he acknowledged that the April 12, 2001 letter representing that Pham's hull was erect six days before the first two hulls were turned was a misrepresentation of the progress on his hull.[6]

Sonny Bosworth testified that Pham's hull, along with two other hulls, was started in April, two or three weeks after the first two hulls had been turned. Bosworth explained Kennedy Ship had to wait two or three weeks after the first two hulls had been turned over because its employees needed to clean the two "jigs"[7] on top of which the hulls would be built and to construct a third jig so that three hulls could be built at one time. Bosworth testified the "frames" for the second set of hulls, including Pham's, were finished in June 2001.

We conclude the evidence is factually sufficient to support a jury finding that Kennedy Ship breached the contract by prematurely demanding the first and sec-

---

**6.** In a post-submission brief, Kennedy Ship asserts there is no evidence that Kennedy Ship misrepresented when Pham's payments were due. To the contrary, Chris Kennedy testified:

Q. All right. If you assume with me that the dates on that website are accurate when this occurred [on] March 18. Then when you sent Mr. Pham a letter representing that his hull was fully erect six days before those boats were flipped, then that would

be a *misrepresentation* on the progress on his hulls, wouldn't it?

A. Yes.

Emphasis added.

**7.** A jig is "device used to maintain mechanically correct the positional relationship between a piece of work and the tool or between parts of work during assembly." WEBSTERS NINTH NEW COLLEGIATE DICTIONARY 649 (1983).

ond payments prior to "hull erection completed."

### 2. ABS Standards

■ Kennedy Ship claims the evidence is factually insufficient to support the jury's finding that it failed to perform the contract based on the failure to construct the boat to comply with ABS standards. The trial below involved two other plaintiffs, Chau Nguyen and Chris Tran (to whom Kennedy Ship had transferred Pham's hull) who also sued Kennedy Ship for breach of contract. The jury found that Kennedy Ship did not breach the other two contracts with Tran and Nguyen.[8] As Kennedy Ship points out, all three contracts contained the same language regarding ABS standards, the three boats were similarly constructed, and Tran's boat had initially been constructed for Pham. In its original appellate brief, Kennedy Ship argues it is unlikely the jury determined that the boat constructed under Pham's contract and transferred to Tran had not been built to ABS standards or that Kennedy Ship was obligated under the contract to obtain ABS certification.

In a post-submission brief, Kennedy Ship argues we must reconcile the jury's various answers in a consistent fashion because the presumption is always that the jury did not intend conflicting answers. Kennedy Ship acknowledges that it has not argued the jury's answers are inconsistent, but contends we should presume the jury intended consistent answers. Therefore, we should, in conducting our factual sufficiency review,[9] assume the jury intended its answers to be consistent among the three plaintiffs.

■ To preserve error that the jury's findings are inconsistent, the complaining party must raise an objection in the trial court before the jury is discharged. *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 861 (Tex. App.-Fort Worth 2003, pet. denied); *Norwest Mortgage, Inc. v. Salinas*, 999 S.W.2d 846, 865 (Tex.App.-Corpus Christi 1999, pet. denied); *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 23 (Tex.App.-Corpus Christi 1993, writ denied); *Wells v. Wells*, No. 14–04–00549–CV, 2006 WL 850844, at *1 (Tex.App.-Houston [14th Dist.] Apr. 4, 2006, pet. filed) (mem.op.). Kennedy Ship has waived this issue by failing to raise it before the trial court discharged the jury and, instead, raising this complaint for the first time on appeal. In any event, we have already determined that the evidence is factually sufficient to support a finding that Kennedy Ship breached the contract by prematurely asking for payment. Kennedy Ship's second issue is overruled.

### III. KENNEDY SHIP'S EXCUSE

■ In its third issue, Kennedy Ship claims the jury's finding that it was not excused from performance is against the great weight and preponderance of the evidence. Because Kennedy Ship challenges the factual sufficiency of an adverse

8. Although Tran and Nguyen filed a notice of appeal, we dismissed their appeal for want of prosecution.

9. In its original appellate brief, Kennedy Ship raised the argument that the evidence is factually insufficient to support a finding that it breached its contract with Pham by failing to build the boat to ABS standards or obtain ABS certification because the jury found against Tran on this issue. In its post-submission brief, Kennedy Ship contends we should

assume the jury intended its answers to be consistent among all three plaintiffs in conducting our *legal sufficiency* review, in addition to our factual sufficiency review. However, we need not address any arguments raised in Kennedy Ship's post-submission brief that were not raised in its original brief. *See Romero v. State*, 927 S.W.2d 632, 634 n. 2 (Tex.1996) (stating petitioner failed to preserve issue for review by raising it for first time post-submission).

finding on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001) (per curiam). In reviewing the complaint that the jury's finding is against the great weight and preponderance of the evidence, we must consider and weigh all the evidence, setting aside the verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Kennedy Ship argues it was excused from any breach because Pham did not make his interim payments, and did not provide adequate assurance he would pay the $700,000 due on the boat if constructed. Section 2.609 of the Uniform Commercial Code,[10] as adopted in Texas, provides that when reasonable grounds for insecurity arise with respect to the performance of either party under a contract, the other party may demand adequate assurance of due performance. *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 140 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd) (citing Tex. Bus. & Com.Code Ann. § 2.609 (Vernon 1994)). The insecure party may suspend any performance for which it has not already received the agreed return until the assurance is received. *Id.* Kennedy Ship argues the greater weight of the evidence established that it demanded in writing adequate assurance of performance and once the assurances were not received, it was entitled to suspend performance. Kennedy Ship argues 30 days after the July 23 letter, Pham's failure to provide assurance constituted repudiation of the contract.

Kennedy Ship's argument assumes all facts it puts forth are true and various payments were due. However, any assurance of payment would not have arisen

because, as addressed above, the evidence supports findings that Kennedy Ship (1) had prematurely demanded a $100,000 payment from Pham on April 12, 2001, (2) had not timely delivered the boat in June 2001, and (3) had transferred Pham's hull to Christopher Tran in May 2001. Kennedy Ship's third issue is overruled.

## IV. Pham's Excuse

In its fourth issue, Kennedy Ship contends the evidence is factually insufficient to support the jury's finding that Pham's breach of the contract was excused. Kennedy Ship argues Pham could not use the June 2001 schedule as an excuse for his nonperformance because, after the June 2001 deadline had passed, Pham elected to affirm the agreement and continue to seek performance, by requesting that it complete the boat and deliver it by December 2001.

"If after a party breaches a contract, the other party continues to insist on performance on the part of the party in default, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties." *Houston Belt & Terminal Ry. v. J. Weingarten, Inc.,* 421 S.W.2d 431, 435 (Tex.Civ.App.-Houston [1st Dist.] 1967, writ ref'd n.r.e.). Thus, when one party materially breaches a contract, the nonbreaching party is forced to elect between two courses of action, i.e., continuing performance or ceasing performance. *Chilton Ins. Co. v. Pate & Pate Enters., Inc.,* 930 S.W.2d 877, 887–88 (Tex.App.-San Antonio 1996, writ denied). Treating the contract as continuing after a breach deprives the nonbreaching party of any excuse for terminating its own performance. *Id.* at 888.

10. Tex. Bus. & Com.Code Ann. § 2.609 (Vernon 1994).

As addressed above, the evidence is factually sufficient to support a jury finding that Kennedy Ship had already transferred the boat under its contract with Pham to Christopher Tran in May 2001. Even if Pham stated in September 2001, that he still wanted the boat under his contract, the subject matter of the contract was no longer available to Pham. Kennedy' breach in transferring the boat under Pham's contract in May 2001, excused Pham from any further performance. Therefore, the evidence is factually sufficient to support a jury finding that Pham is excused for failing to perform under the contract. Kennedy Ship's fourth issue is overruled.

### V. Jury Charge Instruction

▬▬▬ In its fifth issue, Kennedy argues the trial court erred in refusing to include a requested jury instruction. Kennedy Ship complains the jury was not asked to decide who breached first. Kennedy Ship contends it was necessary to instruct the jury when a breach is material and asserts it requested, in substantially correct wording, the following instruction on material breach:

In determining the materiality of a failure fully to perform a promise the following circumstances are influential:

(a) the extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) the extent to which the injured party may be adequately compensated in damages for lack of complete performance;

(c) the extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) the greater or less hardship on the party failing to perform in terminating the contract;

(e) the wilful, negligent or innocent behavior of the party failing to perform;

(f) the greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Advance Components, Inc. v. Goodstein,* 608 S.W.2d 737, 739–40 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.).

At the charge conference, the following took place:

MR. BUCKLEY: There is an instruction on materiality I would ask the Court be included. As you know, there are certainly instances where the term "material breach" is used. In Mr. Baker's proffer. And I would ask the definition of "material breach" as contained in *Advance Components, Inc. Vs [sic] Jerald P. Goodstein,* in the jury charge, that begins on 739 of that case and continues on in the indented section through Subsection F, and for the convenience of the record and with the permission and consent of Mr. Baker and the Court, I would ask that I be permitted to just bracket that section from the case and to have the Court Reporter mark that as an exhibit for this hearing and—or I could read it word for word into the record, but if we substitute.

THE COURT: We will not mark it as an exhibit but put it in with the proffers.

MR. BUCKLEY: I offer that definition on "materiality" from Section 235 Restatement of the law of Contracts, Your Honor.

THE COURT: Okay.[11]

---

**11.** At the charge conference, Kennedy Ship's trial counsel apparently marked the relevant portion of a copy of *Advance Components, Inc. v. Goodstein* and offered it as an exhibit for the charge conference. Although the trial court stated that the copy of the case would be placed "with the proffers," there is no such copy in the appellate record. Kennedy Ship provided this court with a citation to *Advance Components, Inc. v. Goodstein* in its appellate brief.

■ Rule 278 of the Texas Rules of Civil Procedure states "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX.R. CIV. P. 278. To preserve error, the complaining party must tender a written request to the trial court for submission of the instruction, which is in substantially correct wording. *Gerdes v. Kennamer*, 155 S.W.3d 523, 534 (Tex.App.-Corpus Christi 2004, pet. denied). A ruling is also required to pre-serve error. *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 892 (Tex.App.-El Paso 2005, pet. denied).

We find nothing in the record to show that the trial court ruled on Kennedy Ship's request and conclude Kennedy Ship has not preserved this complaint for appellate review.[12] Kennedy Ship's fifth issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

---

**12.** Because Kennedy Ship never obtained a ruling on its request, it is not necessary for us to determine whether Kennedy Ship submit-ted the requested instruction in substantially correct wording.