**Affirmed and Memorandum Opinion filed March 9, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00620-CV

## C. MICHAEL ORR AND LOIS W. ORR, Appellants

## V.

## THOMAS C. SCHOOLER, Appellee

**On Appeal from the County Court at Law**
**Washington County, Texas**
**Trial Court Cause No. 2018-014**

## MEMORANDUM OPINION

Appellants C. Michael Orr and Lois W. Orr appeal from the final judgment in favor of appellee Thomas C. Schooler signed following a one-day bench trial. Finding no error, we affirm the trial court's final judgment.

### BACKGROUND

Appellants contracted to purchase a twenty-acre property in Washington County from the James Gray Revocable Living Trust (the "Trust"). Schooler

resided on the property and he was also a beneficiary under the Trust. Schooler was not a party to the real estate purchase contract.

The contract included a termination option. This option gave appellants the option to terminate the contract "within 3 days after the effective date of the contract." The option also included the following provision: "[t]ime is of the essence for this paragraph and strict compliance with the time for performance is required."

The contract provided that, among other items located on the property, appellants were purchasing "all outdoor art and furniture on [the] property." The contract initially provided for a leaseback of the property to the Trust for a period of two weeks after the closing. The contract also provided that "at [the] time of [the] termination of [the] lease-back[,] all remaining personal items, furniture [and] art will become property of owner." The contract, however, was subsequently amended. The amendment shortened the leaseback period to one week after the closing date. It also provided that the outdoor sculpture Poetry Corner and three metal chairs would be left and become the property of appellants. The amendment further provided that appellants would give Schooler sixty days from the closing date to remove four other large pieces of outdoor sculpture, the Geode, Walking Man, the Seven Deadly Sins, and the Granite Canyon, from the property.[1] The amendment also required that appellants "must agree on days to remove these items in order to have correct weather conditions." Finally, the amendment provided that Schooler was "personally responsible for any damage to the property due to removal of said structures." The amendment did not have a time is of the essence clause. It is undisputed that the Seven Deadly Sins sculpture was removed

---

[1] The Granite Canyon weighs approximately 2 tons. The Geode is approximately seven-feet tall and also very heavy.

before the closing occurred on May 2, 2016 and the sixty-day period ended on July 1, 2016.

The sixty days following the closing were a period when Washington County experienced historic rainfall totals and historic flooding. This extreme weather impacted Schooler's efforts to remove the three outdoor sculptures remaining on the property. During that period, Schooler attempted to coordinate with appellants on dates to remove the sculptures. According to Schooler, both parties agreed that it was best to wait until the rainy weather had improved. Once the weather improved and the ground started to dry out, Schooler contacted appellants and was told the time was not good because they were conducting grass cutting and baling operations on the property. They all agreed to delay moving the artwork because appellants were having work done on the house and it would continue "for the next two months." According to Schooler, Mr. Orr told him that he could take his time because Mr. Orr did not want the property damaged. Finally, on July 15, 2016, Schooler called Mr. Orr and he agreed Schooler could enter the property the next day to remove the Geode sculpture. The two agreed on a 1:30 p.m. meeting time.

Schooler and his contractor arrived at the property the next day about one in the afternoon only to find appellants were not there. Schooler had hired contractors and heavy equipment to move the Geode, so they went ahead and removed it from the property that day. The move occurred in daylight and it took about two to three hours.

About a week later, the sheriff showed up at Schooler's residence to investigate the removal of the Geode sculpture. After talking to Schooler, the sheriff determined that the matter was a civil dispute and left. Appellants filed suit against Schooler asserting a claim under the Texas Theft Liability Act. *See* Tex.

Civ. Prac. & Rem. Code Ann. § 134.001, et seq. Appellants subsequently added claims seeking declaratory and injunctive relief. Schooler filed an answer as well a counterclaim asserting claims for breach of contract and declaratory relief. The case went to trial before the bench. At the conclusion of the trial, the trial court found in favor of Schooler. It signed a final judgment that denied all relief to appellants. It also declared that the four sculptures listed above were the property of the Trust and that Schooler was authorized to retrieve the last two sculptures from the property. Finally, the judgment awarded Schooler his attorney's fees.[2]

The trial court also signed findings of fact and conclusions of law. Among its findings were the following: (1) appellants gave no consideration for the sculptures; (2) Washington County experienced "historic rainfall totals and devastating flooding" during the sixty days following the closing and this delayed Schooler's ability to remove three of the large sculptures; (3) Schooler was required to coordinate removal of the sculptures with appellants and needed the approval of appellants before he could enter the property to remove the sculptures; (4) Schooler attempted to coordinate removal of the sculptures but appellants would not schedule a date until after the sixty-day period had expired;[3] (5) Schooler coordinated with Mr. Orr in mid-July 2016 for the removal of the Geode sculpture and it was removed on July 16, 2016; and (6) Schooler has not removed

---

[2] The parties agreed on the amount of each side's attorney's fees.

[3] The trial court's finding provides: "Defendant attempted to coordinate with Plaintiff for the removal of the remaining artwork during the sixty (60) day period, but Defendant would not schedule a date until after the sixty (60) [day] period expired." The trial court's reference to "Defendant" not scheduling a date until after the sixty-day period expired is clearly a typographical mistake because the contract establishes that it was appellants who had the contractual authority to approve the scheduling of any entry onto the property by Schooler to remove the sculptures. We therefore correct the finding to show that it was appellants/plaintiffs who would not approve a date during the sixty-day period. *See 701 Katy Building, L.P. v. John Wheat Gibson, P.C.*, No. 05-16-00193-CV, 2017 WL 3634335, at *3 n.2 (Tex. App.—Dallas, Aug.24, 2017, pet. denied) (mem. op.) (correcting typographical mistake in fact finding on appeal).

4

the two sculptures remaining on the property due to appellants' actions. The trial court then made the following conclusions of law: (1) appellants "gave no consideration for the artwork known as the large Geode, Walking Man, the Seven Deadly Sins, and Granite Canyon;" (2) "time was not of the essence" for the removal of the sculptures from appellants' property; (3) the four sculptures "are the property of the James Gray Revocable Living Trust;" and (4) Schooler was the prevailing party and was therefore entitled to recover his attorney's fees pursuant to section 134.005 of the Texas Civil Practice and Remedies Code. This appeal followed.

**ANALYSIS**

Appellants raise six issues challenging the trial court's judgment. We address the first, second, third, and fifth issues together. In these issues, appellants argue that the trial court erred when it granted judgment in favor of Schooler and denied them relief. Appellants specifically assert that the trial court erred when it (1) determined that they did not give any consideration for the four sculptures; (2) ruled that the Trust owned the four outdoor sculptures, and that Schooler had the right to remove the sculptures; and (3) concluded that time was not of the essence for the removal of the outdoor sculptures from the property. In their fourth issue appellants argue that the trial court erred when it found that they did not coordinate the removal of the outdoor sculptures in good faith. We need not address this issue because the bad faith finding is immaterial to the trial court's judgment. Finally, because we have rejected appellants' arguments in their consolidated issues and conclude that the trial court did not err in rendering judgment in favor of Schooler, we need not address appellants' sixth issue because it was contingent on a reversal of the trial court's determination that the Trust owned the four outdoor sculptures.

**I.     Standard of review and applicable law**

When a trial court makes specific findings of fact and conclusions of law following a bench trial and a reporter's record is before the appellate court, the findings will be sustained if there is evidence to support them, and the appellate court will review the legal conclusions drawn from the facts found to determine their correctness. *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 789 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Findings of fact have the same force and dignity as a jury's verdict and are reviewable under the same standards of legal and factual sufficiency. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

A party attacking the legal sufficiency of an adverse finding on an issue on which he had the burden of proof must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* at 551. This Court must credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *Id.* The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id.* If there is more than a scintilla of evidence supporting a finding of fact, we will overrule a

legal sufficiency challenge. *CA Partners v. Spears*, 274 S.W.3d 51, 69 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

When a party attacks the factual sufficiency of an adverse finding on which he bore the burden of proof, he must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chemical Co.*, 46 S.W.3d at 242. When a party challenges the factual sufficiency of the evidence supporting a finding on which it did not have the burden of proof, we may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Nip v. Checkpoint Sys., Inc.*, 154 S.W.3d 767, 769 (Tex. App.—Houston [14th Dist.] 2004, no pet.). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *See Ellis*, 971 S.W.2d at 406–07; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the trier of fact, in this case the trial court, is the sole judge of the credibility of the witnesses and the weight to afford their testimony. *Pascouet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the trial court, even if the evidence would support a different result. *Id.* If we determine that the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the challenged finding; we need not do so when we affirm. *See Gonzalez v. McAllen Med. Ctr., Inc.*, 195

S.W.3d 680, 681 (Tex. 2006) (per curiam).

We review a trial court's conclusions of law de novo. *Trelltex, Inc.*, 494 S.W.3d at 790. When performing a de novo review, we exercise our own judgment and redetermine each legal issue. *Id.* To make this determination, we consider whether the conclusions are correct based on the facts from which they are drawn. *Id.*

In construing a written contract, an appellate court's primary goal is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). When construing a contract, we give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and we avoid, when possible and proper, a construction that is unreasonable, inequitable, or oppressive. *Frost Nat'l Bank v. L & F Distrib., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Tenneco, Inc. v. Enterprise Prod. Co.*, 925 S.W.2d 640, 646 (Tex. 1996). In other words, courts cannot make, or remake, contracts for the parties. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998). That is because it is not a court's role to protect the parties from their own agreements. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015).

For a contract to be valid, it must be supported by consideration. *Eurecat US, Inc. v. Marklund*, 527 S.W.3d 367, 387 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A contract that lacks consideration is unenforceable. *Hall v.*

*Hubco, Inc.*, 292 S.W.3d 22, 28 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Whether valid consideration exists is a question of law. *Id.* Consideration can be either a benefit to the promisor or a detriment to the promisee. *Id.*

## II. The trial court did not err when it granted judgment in favor of Schooler and denied appellants' requested relief.

Appellants initially argue that the trial court erred when it concluded that they did not give any consideration for the four sculptures. The agreement at issue here includes both the original Farm and Ranch Contract as well as an amendment. Both the original contract and the amendment must be supported by consideration. *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 319 (Tex. App.— Houston [14th Dist.] 2003, pet. denied) ("A promise to fulfill a pre-existing obligation cannot serve as new consideration."). The initial Farm and Ranch Contract did state that the transaction included "all outdoor art." That, however, is not the totality of the agreement we are called upon to construe in this case because the parties amended the original contract. The amendment expressly carved out four of the outdoor sculptures from the transaction by allowing Schooler, on behalf of the Trust, to remove them from the property. The amendment specifically provided: "Tommy Schooler will agree to leave Poetry Corner sculpture and three metal chairs in place and these items will become the property of the Buyers; Buyers, will then give him sixty days from closing date to remove the large Geode, Walking Man, the Seven Deadly Sins, and Granite Canyon." The parties also agreed in the amendment to reduce the lease back period from the original two weeks to a single week. We conclude the amendment was supported by independent consideration. *Hall*, 292 S.W.3d at 228 (stating that consideration can be either a benefit to the promisor or a detriment to the promisee). As a result, the amendment removed the four named outdoor sculptures from the consideration for

the transaction and the trial court did not err when it reached that conclusion. Additionally, the plain language of the amendment supports the trial court's conclusion that the four named outdoor sculptures remained the property of the Trust and that Schooler had the authority to remove the sculptures from the property.

Finally, appellants argue that the trial court erred when it determined that time was not of the essence in the removal of the four named outdoor sculptures from the property within sixty days of the closing date. We disagree.

Ordinarily, time is not of the essence in the performance of a contract. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Additionally, a date stated for performance in the contract does not mean time is of the essence. *Id.* Instead, the contract must expressly make time of the essence or there must be something in the nature or purpose of the contract and the circumstances surrounding it making it apparent that the parties intended that time be of the essence. *Id.* Unless the contract expressly makes time of the essence, the issue is a fact question to be resolved by the factfinder. *Id.*

We conclude time was not of the essence in the removal of the outdoor sculptures for the following reasons. First, the agreement at issue here did not expressly make time of the essence for the sixty-day removal period. *Id.* The parties did, however, include a time of the essence provision in the option contract establishing they knew how to do so when such a clause was desired. We cannot ignore the fact they chose not to include such a provision in the amendment. *See Bennett v. Commission for Lawyer Discipline*, 489 S.W.3d 58, 68 (Tex. App.— Houston [14th Dist.] 2016, no pet.) (stating that courts are not authorized to rewrite agreements to insert provisions into contract that parties could have included but,

10

for whatever reason, chose not to include). The fact appellants may now wish they had included such a provision does not authorize this court to rewrite the agreement in the guise of construing it. *See Yzaguirre v. KCS Res., Inc.*, 53 S.W.3d 368, 374 (Tex. 2001) ("We will not now rewrite this lease's plain terms to give the Royalty Owners the benefit of a bargain they never made."). Second, the other language of the amendment establishes that the parties did not consider time of the essence. This language includes appellants reserving the right to approve entry onto the property for removal of the outdoor sculptures and the language imposing liability on Schooler for any damage caused by the removal of the outdoor sculptures. Both indicate a decision by the parties to await the perfect time for the removal of such large outdoor artwork rather than a desire to accomplish the removal regardless of the consequences within an arbitrarily set amount of time. We hold the trial court did not err when it concluded that time was not of the essence in the removal of the outdoor sculptures. We overrule appellants' first, second, third, and fifth issues.

Appellants argue in their fourth issue that the trial court erred when it found that they "did not coordinate removal of the artwork with [Defendant] in good faith." The trial court declared in its judgment that the outdoor sculptures belonged to the Trust based on its interpretation of the agreement between the parties. In addition, the trial court awarded attorney's fees to Schooler based on the Texas Theft Liability Act which provides that "each person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees." Tex. Civ. Prac. & Rem. Code Ann. § 134.005. Neither depends on the trial court's bad faith finding. Accordingly, we conclude that we need not reach this issue because this finding is immaterial to the trial court's judgment. *See* Tex. R. App. P. 47.1; *Arriaga v. Cartmill*, 407 S.W.3d 927, 931 (Tex. App.—

Houston [14th Dist.] 2013, no pet.) (disregarding trial court's fact finding because it was immaterial to the trial court's judgment).

Finally, appellants assert that the trial court erred when it awarded Schooler his attorney's fees pursuant to section 134.005 of the Texas Civil Practice and Remedies Code. This issue was contingent on this court reversing the trial court's determination that the outdoor sculptures belonged to the Trust and that it had the legal right to remove them. Because we have affirmed the trial court, we need not reach this issue. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled all of appellants' issues necessary to resolve this appeal, we affirm the trial court's final judgment.


/s/     Jerry Zimmerer
        Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Zimmerer.