**Opinion issued August 4, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00864-CV

———————————

**LLYASAH DUPREE D/B/A 360 DEGREE BEAUTY ACADEMY, Appellant**

**V.**

**BONIUK INTERESTS, LTD., Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-40231**

---

## O P I N I O N

In this commercial lease dispute, Llyasah Dupree, *d/b/a* 360 Degree Beauty

Academy ("Dupree"), sued her landlord, Boniuk Interests, Ltd. ("Boniuk"), for

several causes of action, including breach of lease and fraud.    Boniuk

counterclaimed and alleged that Dupree had breached both her lease and a promissory note that she had entered into with Boniuk. After a bench trial, the trial court rendered a take-nothing judgment against Dupree on her claims and awarded Boniuk $119,665.45 in damages on its claims, plus pre- and post-judgment interest, costs, and $15,000 in attorney's fees. In four issues, Dupree contends: (1) the trial court erroneously considered parol evidence to construe the terms of an unambiguous promissory note; (2) insufficient evidence supports the trial court's finding that she breached her lease obligations because she presented evidence that she tendered rental payments to Boniuk and Boniuk did not deposit those rental payments; (3) an amendment to the lease was invalid because it was not supported by additional consideration; and (4) the trial court erroneously failed to rule that Boniuk had committed fraud when it offered into evidence business records that it acknowledged contained inaccuracies.

We affirm.

## Background

In September 2007, Boniuk and Dupree entered into a written lease agreement ("the Lease") in which Boniuk leased space in a commercial shopping center in northwest Houston to Dupree for use as a beauty and cosmetology school. The initial lease term was for eighty-four months, and the Lease provided that rent payments would begin in January 2008. The Lease required Dupree to pay $700

per month in rent for the first three months of the lease term, $1,400 per month for months four through seven, $5,000 per month for months eight through twenty-four, and $6,000 per month for the remainder of the initial term ("the Minimum Rent"). The Lease also required Dupree to pay, beginning in the eighth month of the lease term, an additional $1,323 per month for common area maintenance, taxes, insurance, and utilities ("the Additional Rent"). Thus, Dupree agreed to pay Boniuk a total of $700 per month for months one through three, $1,400 per month for months four through seven, $6,323 per month for months eight through twenty-four, and $7,323 per month for the remainder of the initial lease term.

The Lease also included a provision stating, "In the event said monthly payment shall not have been paid by the fifteenth (15th) day of the month, then Tenant shall be in default," and a provision stating, "It is covenanted and agreed that if (a) Tenant shall fail to pay any installment of Rental or other monetary charge due to Landlord hereunder within ten (10) days of its due date . . . Landlord lawfully may, immediately, or at any time thereafter, and without demand or notice, enter into and upon the said Premises or any part thereof in the name of the whole and repossess the same . . . ."

In January 2008, Boniuk was in the process of re-roofing the shopping center when a storm further damaged the roof and rainwater flooded the premises, causing damage to the premises itself, as well as to Dupree's business personal

property.  After several months of negotiations with Boniuk concerning repairs to the property, Dupree had lost most of her students at the school, and she needed assistance to continue to meet her rental obligations.

On September 26, 2008, Boniuk and Dupree signed a written amendment to the lease "to help relieve [Dupree] of some of the payments" ("the Amendment"). The Amendment included the following provisions:

1. Landlord agrees to abate the rent for the months of September 2008, October 2008, and November 2008.

2. Landlord agrees to defer $3,000.00 per month of rent for the months of December 2008, January 2009, February 2009[,] and March 2009, which deferment Tenant agrees to pay back by adding $500.00 per month to the full rental obligation beginning in October 2009 (the "Payback Obligation") as stated in #4 below.

3. The full monthly rental obligation including Minimum Rent and all Additional Rent (CAM, Taxes, Insurance, late charges, etc.) as defined in the Lease shall be paid by Tenant beginning April 1, 2009.

4. Tenant shall begin payments on its Payback Obligation beginning October 1, 2009 and continuing for twenty-four (24) months.  Starting with the October 2009 rental payment, Tenant shall add $500.00 per month to the monthly rental obligation, as defined in the Lease; being Minimum Rent plus all Additional Rent (CAM, Taxes, Insurance, late charges, etc.)

Dupree testified that, under this Amendment, Boniuk agreed to temporarily reduce her rent and defer a part of her rental obligations so she could remain a tenant.  The Amendment also included provisions releasing all claims between the parties that existed as of the date of the Amendment and specifying that the original Lease, as

4

modified, remained in effect. The Amendment also modified the due date for rental payments, the late rent date, and the default date and provided that rent was due on or before the tenth day of the month, that rent was considered late if not received by the fifteenth of the month, and that Dupree was in default for non-payment of rent if Boniuk did not receive the rent by the twentieth day of the month.

Despite the Amendment, Dupree continued to struggle to make the rental payments. Toward the end of 2009, Dupree requested that she start the new year, 2010, with a zero balance owed on her Lease to be able to show a more favorable debt-income business ratio so she could continue participating in a federal funding program for her school. She approached Boniuk to discuss ways to restructure their arrangement on the Lease to reduce her outstanding balance. By December 2009, Dupree owed Boniuk $41,499 on the Lease.

On December 18, 2009, Dupree paid Boniuk $20,000 in the form of a cashier's check and executed a promissory note ("Note") in favor of Boniuk in the principal amount of $21,499. The Note provided:

> The Principal Amount and interest are due and payable in sixty (60) equal monthly installments of FOUR HUNDRED FORTY AND 00/100 DOLLARS ($440.00), on the first day of each month, beginning February 1, 2010, and continuing until the expiration of sixty (60) months from the date of this note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

5

> Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

The Note also included a provision that in the event Boniuk did not receive an installment payment it could take back possession of the premises and accelerate payment of the principal and accrued interest. David Boniuk, Boniuk's general partner, testified that aside from her new obligations under the Note, Dupree did not have an outstanding balance as of January 1, 2010.

Dupree testified that she entered into the Note in an attempt to raise capital. She stated that she was to receive $21,499 in cash under the Note, but Boniuk never paid her any portion of that amount. She acknowledged that she only made three payments under the Note, but she stated that she stopped making payments because Boniuk never paid her the principal amount of the Note. Dupree classified the Note as a personal loan and stated that it had "nothing to do with the business."

On cross-examination of David Boniuk, Dupree's counsel asked whether the principal amount of $21,499 was ever paid to Dupree. David Boniuk responded, "It was placed against her account; so [it was] effectively paid to her." He also testified that the amount was credited to her account "[i]mmediately upon signing the note." David Boniuk also testified on direct examination concerning the

6

creation of the Note, which was done to assist Dupree with her participation in a federal funding program. He testified that Boniuk could not completely forgive her outstanding balance, which was more than $41,000 at that point in time, but it could bring her balance down to zero with a combination of its acceptance of a cashier's check from Dupree for $20,000 and Dupree's execution of a promissory note for the remaining balance. Dupree did not object to David Boniuk's testimony concerning the Note on parol evidence grounds or on any other basis.

During Dupree's cross-examination, Boniuk's counsel referenced a record of Dupree's payment history on the Lease for 2010 and 2011, which was labeled as Exhibit D3. Counsel for Boniuk stated that Exhibit D3 was "not 100 percent accurate in its accounting" and that it contained "a mistake in our accounting and I will say that up front." Shortly thereafter, Boniuk's counsel formally offered Exhibit D3 into evidence. Dupree's counsel stated, "That is our exhibit. No objection." The trial court admitted the exhibit. The parties again discussed Exhibit D3 several times during the testimony of David Boniuk, who reiterated that Exhibit D3 contained some inaccuracies.[1] Dupree never objected to Exhibit D3 on any basis.

Dupree acknowledged that Exhibit D3 showed sporadic payments during 2010 with no payments in March, May, July, November, and December. The trial

---

[1] David Boniuk testified that, for example, Exhibit D3 did not reflect the credit to Dupree's account as a result of the Note.

7

court also admitted copies of rental checks from Dupree that Boniuk had deposited, as well as copies of rental checks that Boniuk received from Dupree but did not deposit because Dupree had placed notes on the checks requesting that Boniuk not deposit the checks until she confirmed that her bank account had sufficient funds. For example, the checks for a portion of the rent for May 2010 and the entire June 2010 rental amount, both dated June 9, 2010, included a note stating, "Hello, Please hold these checks until we receive our draw down disbursements[.] It is suppose[d] to be approve[d] at the end of this month. I'm hoping it will clear no later than the 1st week in August. I will call you as soon as they inform me." The exhibit reflected that Boniuk deposited these two checks on August 4, 2010, and August 7, 2010, respectively. The rental checks for August, September, October, November, and December 2010, all included similar notes requesting that Boniuk not deposit the checks until Dupree called to confirm they would clear. Dupree acknowledged that she signed the checks and that her bookkeeper sent them to Boniuk with notes requesting that it wait to deposit the checks, but she also testified that she later told Boniuk to cash the checks and that she had asked Boniuk why it continued to hold onto the checks and not deposit them. She testified that when she submitted rent payments to Boniuk, she had funds available to make those payments.

David Boniuk testified that, under the Lease, if the tenant submits a rent check with a note requesting that Boniuk not deposit it, Boniuk has the right to ignore the note and deposit the check anyway. When asked by Dupree's counsel to explain why Boniuk would hold several checks and not deposit them even though it had the right to ignore the tenant's attached note, David Boniuk stated that if a tenant writes such a note, "it's because they don't have the money," and if Boniuk deposits the check anyway and it bounces, "that's not going to do anybody any good." David Boniuk testified that the checks for August through December 2010 all included notes requesting that Boniuk wait to deposit the checks and that Boniuk never deposited those particular checks.

On January 11, 2011, Boniuk sent Dupree a notice of default under the Note. Specifically, the notice informed Dupree that she had defaulted by failing to make payments under the Note from May 2010 through January 2011 and demanded that Dupree pay her outstanding balance of $4,356. The notice also informed Dupree that if she did not cure her default within ten days, Boniuk intended to accelerate the Note and demand payment of the outstanding principal balance and accrued but unpaid interest in full. Dupree did not make any further payments under the Note.

After Dupree failed to make payments under the Note and failed to make rental payments in full under the Lease, Boniuk changed the locks on the premises on March 11, 2011. David Boniuk testified that, as of that date, Dupree owed

Boniuk approximately $45,000. Dupree filed a writ of re-entry in the justice court on March 22, 2011, and the justice of the peace held a hearing two days later. The justice of the peace determined that Boniuk had permissibly locked Dupree out of the premises.

On March 28, 2011, Boniuk sent Dupree two letters via certified mail demanding that Dupree pay her outstanding balance of $44,141.95 pursuant to the Lease and $24,186.06 pursuant to the Note. Dupree did not pay any portion of the outstanding balances. Boniuk made an additional demand on July 19, 2013, of $91,168 due under the Lease and $28.497.45 due under the Note. Dupree still did not pay any portion of the outstanding balances.

Dupree sued Boniuk on July 9, 2013, asserting causes of action for breach of the Lease, wrongful eviction, retaliatory eviction, reimbursement, fraud, and violations of the Deceptive Trade Practices Act. As the basis for her fraud claim, Dupree alleged:

> Prior to the signing of the aforesaid lease, the Plaintiff Dupree had told the Defendant Boniuk that the Plaintiff intended to conduct a barber and cosmetologist school on the premises. As an inducement to the Plaintiff to enter into the aforesaid lease, the Defendant falsely represented to the Plaintiff the premises would be repaired so that Plaintiff could occupy them and conduct the activities she wished to so conduct there.

At trial, Dupree pursued only her causes of action for breach of the Lease and fraud.

10

Boniuk filed a counterclaim against Dupree, alleging causes of action for breach of the Lease and breach of the Note. Specifically, Boniuk alleged that Dupree defaulted under the Lease "by failing to pay the rent due" and defaulted under the Note by "failing to pay the amount due." Boniuk sought as damages the unpaid balance under the Lease—$91,168—and the unpaid balance under the Note—$28,497.45.

After a bench trial, the trial court rendered a take-nothing judgment against Dupree on her claims. The trial court also awarded Boniuk a total of $119,665.45 in damages on its claims, pre- and post-judgment interest, $15,000 in attorney's fees, and court costs.

Dupree requested that the trial court file written findings of fact and conclusions of law. The trial court filed findings and conclusions, including the following findings of fact:

1      Boniuk Interests, Ltd (Landlord) and Llyasah M Dupree (Tenant) entered into a written lease agreement on September 30, 2007, whereby [Boniuk] leased real property . . . to [Dupree] for use as a beauty cosmetology school and related activities[.]

2      The lease was for an eighty-four (84) month initial term commencing on January 28, 2008[.]

3      [Dupree] promised to pay the minimum rent under the Lease, which was $[700.00] per month (months 1–3), $1,400 per month (months 4–7), $5,000 per month (months 8–24), and $6,000 per month (months 25–84)[.] In addition, [Dupree] agreed to pay the additional charges for Common Area Maintenance, taxes and insurance, and water/sewer adding an

11

additional $[1,323.00] per month beginning in month 8, resulting in a total gross rent obligation of $6,323 per month (months 8–24), and $[7,323.00] per month (months 25–84)[.]

4  The Lease was amended on September 26, 2008[.]

5  [Dupree] entered into possession of the premises, and, despite [Boniuk's] full performance of all obligations and conditions of the lease, [Dupree] failed to pay the rent pursuant to the terms of the lease[.]

6  Dupree struggled to pay the rental payments at various times during the time period she occupied the premises[.]

7  During December 2009, Dupree requested that she start the new year (2010) with a zero ($0) balance so that the business debt-to-income ratio would look better for the government auditors[.]  Thus, on or about December 18, 2009, [Dupree] executed and delivered to [Boniuk] a promissory note dated December 18, 2009, whereby [Dupree] promised to pay to the order of [Boniuk] the sum of $[21,499.00.]

8  [Dupree] breached the lease by failing to pay rent due and continued in default despite [Boniuk] giving Llyasah Dupree notice of default[.]

. . . .

13  [Dupree] defaulted in failing to pay her rental payments when due[.]

14  The Lease has been breached . . . by failure to pay rent due under the terms of the lease[.]

. . . .

18  [Dupree] has failed to pay said account to [Boniuk.]

19  That the correct balance due to [Boniuk] for rental payments in this lawsuit is $91,168[.]00[.]

20  On or about December 18, 2009, . . . [Dupree] executed and delivered to [Boniuk] a promissory note dated December 18, 2009, whereby [Dupree] promised to pay to the order of [Boniuk] the sum of $[21,499.00], due and payable in equal

12

monthly installments of $[440.00] from February 1, 2010 through February 1, 2015 . . . .

. . . .

22　Llyasah Dupree made only one payment towards the note, $[1,452.00] on June 10, 2010[.] Despite [Boniuk's] demand for payment from [Dupree] after the note became due and payable, [Dupree] made only one payment towards the note, $[1,452.00] on June 10, 2010[.]

23　[Dupree] defaulted in failing to pay her note payments when due[.]

24　The Note has been breached by failure to pay payment obligations due under the terms of the note[.]

25　[Boniuk] has requested [Dupree] to pay [Boniuk] those sums due and owing to [it.]

26　On or about January 11, 2011, [Boniuk] sent notice of default and intent to accelerate to Llyasah Dupree[.] On or about March 28, 2011, [Boniuk] accelerated the maturity of the note and demanded payment of the note in full by Llyasah Dupree, but no additional payments have been made[.] Finally, on or about July 19, 2013, [Boniuk] sent demand for payment of the note in the amount of $[28,497.45.]

27　[Dupree] has failed to pay said account to [Boniuk.]

28　That the correct balance due to [Boniuk] for note payments in this lawsuit is $[28,497.45.]

. . . .

30　The September 26, 2008 lease amendment abated the rent for the months of September, October and November 2008[.] It also deferred $3000 per month of rent for the months of December, 2008 through March, 2009, with the agreement that [Dupree] would pay these deferred amounts in increments of $500 per month for 24 months beginning October, 2009[.] This amendment also included a mutual release of all claims between the parties existing at the time of the amendment[.]

13

The trial court also concluded, in one of its conclusions of law, that "[t]he Lease has been breached for failure to pay rents due to [Boniuk] pursuant to the terms of the Lease Agreement[. Dupree] defaulted under the Lease by failing to pay the rent due[.]" The trial court also concluded that "[t]he Note has been breached for failure to pay principal and interest due to [Boniuk] pursuant to the terms of the Promissory Note." This appeal followed.

## Sufficiency of Evidence

In her second issue, Dupree contends that the trial court erred in ruling that she had not tendered her monthly rental payments under the Lease because she presented evidence that she had tendered rental checks for August through December 2010. She argues that Boniuk had the authority under the Lease to deposit the checks and that, if it had deposited the checks and the checks were then returned for insufficient funds, then Boniuk could argue that she failed to tender her rental payments. Instead, however, Boniuk "did not deposit the tendered funds and proceeded straight to eviction, without any evidence that [Dupree's] tendered payments were not adequately funded."

### A. Standard of Review

In an appeal from a bench trial, we review a trial court's findings of fact under the same sufficiency of evidence standards used when determining whether sufficient evidence exists to support a jury finding. *See Catalina v. Blasdel*, 881

14

S.W.2d 295, 297 (Tex. 1994). In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the appellant challenges an adverse finding on an issue on which she had the burden of proof at trial, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam); *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When the appellant challenges an adverse finding on an issue on which she did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176; *Reliant Energy Servs., Inc.*, 336 S.W.3d at 782.

In a bench trial, the trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *Merry Homes, Inc. v. Chi Hung Luu*, 312 S.W.3d 938, 943 (Tex. App.—Houston [1st Dist.] 2010, no pet.). As long as the evidence presented at trial falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact finder. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

We review a trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Even if we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment. *See id.* We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence. *Merry Homes*, 312 S.W.3d at 943 (citing *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 769 (Tex. App.—Corpus Christi 2001, no pet.)).

### B. Breach of the Lease

The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) breach of the contract by the defendant; and (4) damages to the claimant resulting from the breach. *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 213 (Tex. App.—El Paso 2010, pet. denied). A tender is an unconditional offer by a debtor to pay another a sum not less in amount than that due on a specified debt. *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 320 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (citing *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex. 1963)). A valid and legal tender of money "consists of the actual production of the funds to pay the debt involved." *Id.* The party making the tender must relinquish possession of the funds under such circumstances as to enable the party receiving the tender to acquire possession

16

without special effort on its part. *Id.* Generally, a tender of payment must include everything to which the creditor is entitled; any less sum is ineffective. *Id.* The party asserting a valid tender bears the burden of proving it. *Id.*

In arguing that she presented evidence that she tendered performance under the Lease, Dupree focuses on the facts that she gave rental checks to Boniuk for the months of August through December 2010, that Boniuk had the authority to deposit the checks under the Lease even if the checks constituted only partial performance of her rental obligations, that Boniuk did not deposit the checks for those five months even though it had no evidence that the checks would be returned for insufficient funds, and that she authorized Boniuk to cash these checks. Dupree thus argues that the trial court "erred by ruling that [she] had not tendered the funds for payment of lease payments for the period from August 2010 to December 2010."

At trial, Dupree acknowledged that when she submitted her rental checks to Boniuk for the months of August through December 2010, her bookkeeper attached a note to these checks requesting that Boniuk wait to deposit the checks until Dupree called to confirm that funds were available. This is not an "unconditional offer" to pay an amount due on a specified debt and does not amount to "actual production of the funds to pay the debt involved." *See id.* Instead, Dupree did not make the funds for the rental payments for August through

17

December 2010 immediately available to Boniuk "as to enable the person to whom [the payments are] tendered, without special effort on [its] part, to acquire possession" of the funds tendered. *See id.* We therefore hold that Dupree's rental checks for August through December 2010, which included notes requesting that Boniuk wait to deposit the checks, did not constitute a valid tender of performance on Dupree's part for those five months. *See id.*

We further note that, in its findings of fact and conclusions of law, the trial court did not make any specific findings concerning whether Dupree tendered payment for the months of August through December 2010. Instead, the only findings that the trial court made relevant to the issue of Dupree's breach of the Lease are:

> 8    [Dupree] breached the lease by failing to pay rent due and continued in default despite [Boniuk] giving Llyasah Dupree notice of default[.]
>
> . . . .
>
> 13   [Dupree] defaulted in failing to pay her rental payments when due[.]
>
> 14   The Lease has been breached . . . by failure to pay rent due under the terms of the lease[.]

The trial court further concluded, in its conclusions of law, that "[t]he Lease has been breached for failure to pay rents due to [Boniuk] pursuant to the terms of the Lease Agreement[. Dupree] defaulted under the Lease by failing to pay the rent due[.]"

18

Dupree's rental obligation during 2010 and 2011 under the terms of the Lease and the Amendment was $6,323 per month. The trial court admitted into evidence checks submitted by Dupree to Boniuk during 2010 and 2011. In 2011, Dupree submitted a cashier's check in the amount of $3,000 on January 20, 2011, a cashier's check in the amount of $2,100 on February 19, 2011, and a cashier's check in the amount of $900 on February 28, 2011. Dupree therefore did not timely satisfy her rental obligation for the first three months of 2011. David Boniuk testified that, at the time Boniuk changed the locks on the premises on March 10, 2011, Dupree had an outstanding balance of $45,000, an amount far in excess of the sum of Dupree's rental payments for August through December 2010. Thus, even if Dupree had properly tendered her rental payments for August through December 2010, Boniuk presented evidence that Dupree breached the Lease in other months. Dupree does not challenge any of this evidence on appeal.

We therefore conclude that factually sufficient evidence supports the trial court's fact findings that Dupree breached the Lease by failing to pay rental amounts due. Thus, the trial court did not err by concluding that Dupree had breached the Lease, that a take-nothing judgment against Dupree was proper on her

breach of lease claim, and that Boniuk was entitled to judgment on its breach of lease claim.[2]

We overrule Dupree's second issue.

## Consideration of Parol Evidence

In her first issue, Dupree contends that the trial court erroneously considered parol evidence when construing the terms of the unambiguous Note. Specifically, Dupree contends that the trial court erred in considering evidence presented by Boniuk that, instead of Boniuk paying the principal amount of the Note in cash to Dupree, Dupree received a credit in that amount on her account with Boniuk.

We construe written contracts to give effect to the parties' intent expressed in the text of the contract "as understood in light of the facts and circumstances surrounding the contract's execution, subject to the limitations of the parol-evidence rule." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014) (citing *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d

---

[2] We note that, even if Dupree tendered payment of the rental amounts for August through December 2010, to obtain reversal of the trial court's judgment on her own breach-of-lease claim, she must also establish that the trial court's implied finding that Boniuk did not breach the Lease was against the great weight and preponderance of the evidence. *See Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 218 (Tex. App.—El Paso 2010, pet. denied) (listing elements of breach of lease claim); *see also Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (stating that when appellant challenges sufficiency of evidence to support adverse finding on which she had burden of proof at trial, appellant must demonstrate that finding is against great weight and preponderance of evidence). Dupree makes no such showing or argument on appeal.

462, 469 (Tex. 2011)). When interpreting an integrated writing, the parol-evidence rule precludes the consideration of evidence that renders a contract ambiguous when the document, on its face, is capable of a definite legal meaning. *Id.* (citing *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731–32 (Tex. 1981)). The parol-evidence rule does not prohibit the consideration of surrounding facts and circumstances that inform the contractual text and render it capable of only one meaning. *Id.*; *Houston Exploration Co.*, 352 S.W.3d at 469 ("The rule does not prohibit consideration of surrounding circumstances that inform, rather than vary from or contradict, the contract text."). The terms of a promissory note cannot be contradicted or varied by parol evidence of a manner of payment other than as expressed in the note. *DeClaire v. G & B Mcintosh Family Ltd. P'ship*, 260 S.W.3d 34, 45 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Dameris v. Homestead Bank*, 495 S.W.2d 52, 54 (Tex. Civ. App.—Houston [1st Dist.] 1973, no writ)). Parol evidence may be admissible to show collateral, contemporaneous agreements that are consistent with the underlying agreement to be construed, but this exception to the general parol evidence rule "does not permit parol evidence that varies or contradicts either the express terms or the implied terms of the written agreement." *Id.*

Here, Dupree and Boniuk executed a promissory note under which Dupree was responsible for repaying the principal amount of $21,499 to Boniuk. The Note included the following terms:

**Date:** December 18, 2009

**Borrower:** Llyasah M. Dupree

. . . .

**Lender:** Boniuk Interests, Ltd., a Texas limited partnership

. . . .

**Principal Amount:** $21,499.00

**Annual Interest Rate:** Eight Percent (8%)

**Maturity Date:** February 1, 2014

**Annual Interest Rate on Matured, Unpaid Amounts:** Fifteen Percent (15%)

**Terms of Payment (principal and interest):**
The Principal Amount and interest are due and payable in sixty (60) equal monthly installments of FOUR HUNDRED FORTY AND 00/100 DOLLARS ($440.00), on the first day of each month, beginning February 1, 2010 and continuing until the expiration of sixty (60) months from the date of this note, when the entire amount of principal and accrued, unpaid interest will be payable in full. Payments will be applied first to accrued interest and the remainder to reduction of the Principal Amount.

Borrower promises to pay to the order of Lender the Principal Amount plus interest at the Annual Interest Rate. This note is payable at the Place for Payment and according to the Terms of Payment. All unpaid amounts are due by the Maturity Date. After maturity, Borrower promises to pay any unpaid principal balance plus interest at the Annual Interest Rate on Matured, Unpaid Amounts.

. . . .

At trial, Dupree acknowledged on direct examination that she only made three payments under the Note, but she testified that she stopped making payments because her understanding was that, pursuant to the Note, Boniuk was to pay her $21,499 in cash, which she would then repay in installments, but Boniuk failed to pay her the principal amount. She stated that the Note was intended to be a personal loan to her. David Boniuk testified that Dupree had an outstanding balance of over $41,000 at the time she executed the Note and that the principal amount of the Note "was placed against [Dupree's] account; so [it was] effectively paid to her." He stated that Boniuk applied this credit to Dupree's account immediately upon signing of the Note.

We conclude that the parol evidence rule does not bar David Boniuk's testimony. The Note states only that the principal amount is $21,499 and that Dupree is to repay that amount in monthly installments of $440 over a period of sixty months. The Note is silent concerning the manner in which Dupree was to receive the principal amount, whether in cash—as Dupree testified at trial—or as a credit against her outstanding balance with Boniuk—as David Boniuk testified. Regardless of whether she received $21,499 in cash or a $21,499 credit against her outstanding balance, Dupree received the benefit of the principal amount of $21,499, as the Note requires. David Boniuk's testimony that Dupree received the principal amount of the Note in the form of a credit does not vary or contradict the

terms of the Note and, thus, is not barred by the parol evidence rule. *See Houston Exploration Co.*, 352 S.W.3d at 469; *DeClaire*, 260 S.W.3d at 45.

We overrule Dupree's first issue.

**Additional Consideration to Support Lease Amendment**

In her third issue, Dupree contends that the trial court erred by ruling that the Amendment to the Lease was valid and legally enforceable because it was not supported by separate and independent consideration.

A modification to a contract, such as a lease agreement, must itself be supported by consideration to be valid. *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986) ("Parties have the power to modify their contracts. A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration."); *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 113 (Tex. App.—El Paso 1997, pet. denied) ("To conclude that there was a valid modification, the jury had to favorably determine two elements. The first is that the modification is based upon new consideration."). Consideration may consist of a benefit that accrues to one party, or, alternatively, a detriment incurred by the other party. *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 315 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *see Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991) ("Consideration is a present exchange bargained for in return for a promise. It consists of either a benefit to the promisor

24

or a detriment to the promisee. The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment."). A promise to fulfill a pre-existing obligation cannot serve as new consideration for an amendment to a contract. *Walden*, 97 S.W.3d at 319.

Here, Dupree argues that she "had a pre-existing duty to pay the amounts provided for in the alleged amendment to the lease agreement." She claims that she "did not provide any new consideration" and that the Amendment was therefore unenforceable. Boniuk argues that the Amendment was supported by additional consideration because, in the Amendment, it agreed to abate and defer several of Dupree's rental payments in exchange for Dupree remaining a tenant. We agree with Boniuk.

The parties executed the Amendment to the Lease on September 26, 2008. The Amendment included the following terms:

1.  Landlord agrees to abate the rent for the months of September 2008, October 2008, and November 2008.

2.  Landlord agrees to defer $3,000.00 per month of rent for the months of December 2008, January 2009, February 2009 and March 2009, which deferment Tenant agrees to pay back by adding $500.00 per month to the full rental obligation beginning in October 2009 (the "Payback Obligation") as stated in #4 below.

3.  The full monthly rental obligation including Minimum Rent and all Additional Rent (CAM, Taxes, Insurance, late charges, etc.) as defined in the Lease shall be paid by Tenant beginning April 1, 2009.

25

4. Tenant shall begin payments on its Payback Obligation beginning October 1, 2009 and continuing for twenty-four (24) months. Starting with the October 2009 rental payment, Tenant shall add $500.00 per month to the monthly rental obligation, as defined in the Lease; being Minimum Rent plus all Additional Rent (CAM, Taxes, Insurance, late charges, etc.)

On direct-examination, Dupree testified that the parties entered into the Amendment "to help relieve [her] of some of the payments." Boniuk reduced the rent for a period of time so Dupree could stay as a tenant and keep her business going. On cross-examination, Dupree again agreed that this Amendment was designed to "help relieve some of the financial stress [she] had in regard to [her] business" during 2008, and she testified that, in the Amendment, Boniuk "worked out a payment structure which helped but did not resolve the problem." She agreed with Boniuk's counsel that, under the first term of the Amendment, Boniuk essentially gave her three months in which she did not have to pay rent and that, under the second term of the Amendment, Boniuk subtracted $3,000 per month in rent for four months, although Dupree was obligated to repay those amounts beginning several months later.

Both parties received a benefit as a result of the Amendment. Boniuk retained Dupree as a tenant, and Dupree was relieved of her obligation to pay rent for three months and then received a deferment for a portion of the rent for four further months. Boniuk was not required to offer these rental concessions to Dupree, and, as a result of the concessions, it essentially lost approximately

26

$15,000 in rental obligations to which it was otherwise entitled. *See Walden*, 97 S.W.3d at 315 (stating that consideration may consist of benefit that accrues to one party or, alternatively, detriment that is incurred by other party). We therefore conclude that the Amendment was supported by new consideration and is enforceable.[3]

We overrule Dupree's third issue.

## Fraud

Finally, in her fourth issue, Dupree contends that the trial court erred in not ruling that Boniuk had committed fraud when it offered into evidence a business record that it knew contained accounting inaccuracies. Specifically, Dupree argues that the trial court should not have admitted Exhibit D3—a "tenant payment list" reflecting payments owed by Dupree and received by Boniuk during 2008–2011— because Boniuk "knew that the business records were inaccurate when they were offered for admission and were offered to deceive the court" and because "they were offered based on fraud."

Evidentiary rulings are committed to the trial court's sound discretion. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per

---

[3]     Dupree does not contend that the original Lease was unenforceable. Thus, even if the Amendment were not supported by new consideration and were unenforceable, the original Lease obligations, including the required rental payments, would still have continued in effect. As we have discussed with respect to Dupree's second issue, the record contains evidence that Dupree breached the Lease by not making the required rental payments.

curiam); *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 239 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Simien*, 321 S.W.3d at 239.  A trial court abuses its discretion when it acts without reference to any guiding rules or principles.  *Id.* (citing *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)).

To preserve error concerning the admission of evidence, the complaining party must timely and specifically object to the admission of evidence and receive a ruling by the trial court.  *See* TEX. R. APP. P. 33.1(a)(1).  "Error is waived if the complaining party allows the evidence to be introduced without objection."  *Bay Area Healthcare Grp., Ltd.*, 239 S.W.3d at 235.

Here, Dupree argues on appeal that the trial court should not have admitted Exhibit D3 because the exhibit contained inaccuracies,[4] Boniuk knew that the exhibit contained inaccuracies when it offered the exhibit for admission into evidence, and Boniuk offered the exhibit "based on fraud" and "to deceive the court."  Dupree, however, did not object in the trial court to the admission of Exhibit D3.  Instead, while cross-examining Dupree, Boniuk's counsel and the trial court briefly discussed Exhibit D3, and Boniuk's counsel stated that "[Exhibit D3] is not 100 percent accurate in its accounting" and that "it's a mistake in our

---

[4]     Exhibit D3 did not show that while Dupree had a reduced rental obligation for December 2008 through March 2009 under the Amendment, she was still required to pay $1,323 in Additional Rent, and it did not show for April through August 2009 that the period of reduced rent had ended.

28

accounting and I will say that up front." Boniuk later offered Exhibit D3 for admission into evidence, and Dupree's counsel stated, "That is our exhibit. No objection." David Boniuk testified later, in reference to Exhibit D3, that "[t]here are some inaccuracies in this piece of paper right here." Dupree never objected or argued that the purported inaccuracies in Exhibit D3 rendered the exhibit inadmissible or that Boniuk committed fraud by offering the exhibit into evidence. We therefore conclude that Dupree waived any error concerning the admission of Exhibit D3 into evidence. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Bay Area Healthcare Grp., Inc.*, 239 S.W.3d at 235 ("Error is waived if the complaining party allows the evidence to be introduced without objection.").

We overrule Dupree's fourth issue.[5]

---

[5] To the extent Dupree argues that the trial court erred in entering a take-nothing judgment against her on her fraud claim because Boniuk offered Exhibit D3 into evidence while knowing that it contained inaccuracies, we note, as Boniuk points out, that Dupree has not presented sufficient evidence to support every element of a fraud cause of action. Dupree has, for example, presented no evidence that she acted in reliance upon Boniuk's representations concerning Exhibit D3 to her detriment. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (listing elements of fraud cause of action) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam)). Dupree, therefore, has not established that the trial court's implied finding that she was not entitled to relief on her fraud claim was against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242 (holding that appellant, when challenging adverse finding on issue on which she had burden of proof at trial, must establish that finding was against great weight and preponderance of evidence).

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Huddle, and Lloyd.