**Opinion issued December 20, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-15-01048-CV**

———————————

**MOBILELINK SAN ANTONIO, LLC, Appellant**

**V.**

**PNK WIRELESS COMMUNICATION, INC., Appellee**

---

**On Appeal from the County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1047076**

---

**MEMORANDUM OPINION**

Mobilelink San Antonio, LLC contracted with PNK Wireless Communication, Inc., agreeing to buy four PNK's cellphone retail stores and assume the lease obligations. Mobilelink did not pay PNK the full contract price or pay rent on some of the locations after PNK assigned the leases. PNK sued

Mobilelink for breach-of-contract damages, and the trial court awarded PNK over $70,000 in damages. Mobilelink argues (1) PNK materially breached the contract, excusing Mobilelink's performance; (2) legally and factually insufficient evidence exists to support the trial court's damages award; (3) the name of the party in the judgment did not conform to the party listed in PNK's written pleadings; and (4) PNK did not present evidence of reasonable and necessary attorney's fees. We affirm.

## Background

PNK Wireless sells cellphones and cellphone plans for several cellphone service providers. It signed a contract with Mobilelink to sell it four stores, including the assets in each of the stores, in San Antonio for $90,000. As part of the sale, Mobilelink agreed to execute four separate agreements assuming each of the four leases.

According to PNK's owner, Pervez Rouf, PNK and Mobilelink agreed to the sale of the four stores as a "package deal" because two of the stores, located at 2144 Austin Highway and 1308 Austin Highway, were "making good money," while another, the "Blanco" store, was "almost breaking even," and the fourth, the "Babcock" store, was "losing money."

## A.    Contract

Mobilelink paid PNK $45,000 when it signed the contract and was obligated to pay PNK the other $45,000 a few months after the leases were assigned to Mobilelink. Under the contract, Mobilelink would pay the security deposits held by the four landlords back to PNK at the end of the leases.

The contract provided that "time is of the essence" and that the contract closing would "take place on or before October 21, 2013," three days after the date of the contract. The contract also required PNK to ensure that "[a]ssignment of lease agreements" occurred by October 21. Finally, the contract provided that it "may be amended, modified or supplemented at any time by the parties to this Agreement, under an instrument in writing signed by all parties."

## B.    Transfer

Rouf testified that, on October 23 or 24, he personally went to each of the stores with Salman Khan, who was the brother of Mobilelink's owner and was Mobilelink's district director in San Antonio. With the exception of the 1308 Austin Highway Store, Rouf "opened the store, showed [Khan] the stuff inside the store, and handed him the key and he accepted it."

Two of the leases were assigned without any issues. Mobilelink signed an assignment of PNK's lease of the 2144 Austin store, which listed the security deposit at $1,010, on October 24. And Mobilelink signed the assignment of PNK's

3

lease of the Blanco store, which listed the security deposit at $1,887.50, on November 17.

But the assignment of the leases of the remaining two stores had complications. On October 24, Rouf drove Khan to the 1308 Austin Highway location but could not deliver him a key because, according to Rouf, "the store was locked out." Rouf talked to the landlord, who agreed to sign a new lease with Mobilelink instead of having PNK assign the lease's remaining few months to Mobilelink. Mobilelink signed the new lease and PNK transferred the store's contents to Mobilelink.

Also on October 24, Rouf drove Khan to the least profitable store, the Babcock location, opened the store, and gave him the key to the store. On October 29, PNK signed the assignment for the Babcock store, which contained signature blocks for PNK, Mobilelink, and the landlord, but neither Mobilelink nor the landlord ever signed the assignment agreement. Rouf testified that in June 2014, he received a notice from the landlord that PNK owed $19,048 in past due rent that accumulated after PNK signed the assignment for the Babcock store.

## C.    Trial

In addition to not paying rent on the unprofitable Babcock store, Mobilelink never paid PNK the remaining $45,000 due on the contract or reimbursed PNK's security deposits. PNK sued Mobilelink for breach of contract. Mobilelink filed a

counterclaim, arguing that PNK breached the contract by not delivering a written assignment of two of the stores and store equipment by October 21.

The trial court conducted a bench trial. At trial, Mobilelink's attorney asked Rouf to clarify the correct name of his company. Rouf testified that, although the pleadings listed his company as "P & K Wireless Communications, Inc.," the correct name of his company was "PNK Wireless Communications, Inc." PNK's attorney moved to orally amend its pleadings to reflect the correct name. After Mobilelink's attorney stated that he had no objection to the proposed amendment, the trial court granted PNK's request.

Although both parties requested an award of attorney's fees, only Mobilelink's attorney introduced an invoice detailing his hourly rate and activities on the case. The invoice showed that Mobilelink invoiced $6,250 in attorney's fees through three days before the trial, and only one hour for the day of trial, for a total of $6,500. Rauf, PNK's owner, testified that PNK sought "$8,450 in attorney fees" but offered no details on the services provided by PNK's attorney. PNK's attorney did not testify, nor did he present any evidence regarding the fees charged to PNK.

The trial court entered judgment for PNK. It awarded PNK $73,623 in actual damages and $8,450 in attorney's fees and costs. Mobilelink appeals the trial court's judgment.

5

**Material Breach**

Mobilelink argues that PNK materially breached the contract because (1) Mobilelink did not receive an assignment of two of the four store leases by the sale contract closing date and (2) PNK did not pay the October rent for all four stores. Thus, Mobilelink argues, it "is discharged or excused from further performance" because of PNK's prior material breach.

PNK replies that it did not materially breach the contract because (1) "the evidence conclusively shows that Mobilelink accepted and/or operated all four stores that were the subject of the contract," (2) "Mobilelink accepted the late performance and waived the time is of the essence clause," and (3) "the evidence shows that the parties agreed that Mobilelink would make [the October 2013 rent] payments and that although Mobilelink issued the checks, PNK made the payments to the landlords" for those rents.[1]

**A.    Applicable law**

If "one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.). But "[i]f the non-breaching party continues to insist on performance by the party in default, the

---

[1]    Because we hold that PNK did not materially breach the lease, we do not address its alternative argument that Mobilelink did not preserve this issue because it only argued material breach in its counterclaims, not as an affirmative defense.

previous breach by the breaching party is not an excuse for nonperformance by the non-breaching party and the contract continues in full force." *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 216 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Thus, when one party commits a material breach, the non-breaching party must "choose between continuing performance and ceasing performance." *Id.* And when, as here, a case is tried to the bench, but the trial court does not make findings of fact or conclusions of law, we must imply all necessary findings in support of the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

## B. Late performance

Mobilelink argues that, because PNK did not deliver assignments of two of the stores by October 21, PNK materially breached the contract and Mobilelink was excused from any further performance.

Time is not presumed to be "of the essence" and, thus, late performance generally is not a material breach of a contract. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.). But if, like here, a contract expressly makes time of the essence, late performance may be treated as a material breach. *Id.* at 19–20. A material breach arising from a time-is-

7

of-the essence provision may be waived by acceptance of late performance. *Id.* at 20.

"A waiver of time of performance of a contract will result from any act that *induces* the opposite party to believe that exact performance within the time designated in the contract will not be insisted upon." *Id.* (citation omitted). For example, in *Maroy International, Inc. v. Cantu*, the non-breaching party waived the time-is-of-the-essence clause because it accepted two late payments and retained cashier's checks for the remaining balance owed for six months before taking any action or complaining of late performance. No. 04-12-00193-CV, 2013 WL 1149066, at *3 (Tex. App.—San Antonio Mar. 20, 2013, pet. denied) (mem. op.).

Similarly, Mobilelink accepted assignments of the leases of two of the four stores days after the closing date specified in the contract without demanding the return of the $45,000 it originally paid on the contract or otherwise indicating that it was terminating the contract. By accepting the assignments, Mobilelink waived the time-is-of-the-essence clause. Accordingly, the trial court could have found that PNK's failure to deliver all four stores by October 21, 2013 was not a material breach and did not excuse Mobilelink from its contractual obligations.

## C. Rent payments

Mobilelink argues that PNK did not pay the October rents, which materially breached the contract and excused Mobilelink from any further performance. PNK responds that Mobilelink waived its right to demand performance or complain of non-performance because Mobilelink issued checks to pay the October rents without complaint despite the contract terms.

Contract provisions that are in a contract for a particular party's benefit can be waived by that party. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 722 (Tex. App.—Dallas 2004, no pet.). "A waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right." *Id.* A waiver of a contractual provision is "unilateral in character; it results as a legal consequence from some act or conduct of the party against whom it operates . . . ." *Id.* Such a waiver does not require a new contract or consideration. *Id.* The party attempting to establish a waiver must present evidence of "an intent to relinquish a known right" such as a "party's silence or inaction for a period of time long enough to show an intention to yield the known right." *Id.*

For example, in *STR Constructors, Ltd. v. Newman Tile, Inc.*, a contractor's silence and inaction on a certain contractual provision constituted waiver of that provision. 395 S.W.3d 383, 389–90 (Tex. App.—El Paso 2013, no pet.). That

contract provided that the contractor did not have to pay a subcontractor until the customer paid the contractor. *Id.* at 389. The contractor, however, made two payments to the subcontractor before the customer paid. *Id.* By making payments to the subcontractor without first receiving the customer's payment, the contractor waived the contractual provision that conditioned its obligation to pay the subcontractor on receiving payment from the customer. *Id.* at 390.

Similarly, in *Blackstone Medical, Inc. v. Phoenix Surgicals, L.L.C.*, a medical product producer's inaction waived a contractual provision that prohibited its distributor from selling competitors' products. 470 S.W.3d 636, 648 (Tex. App.—Dallas 2015, no pet.). Although the contract between the distributor and the producer stated that the distributor would not sell products created by the producer's competitors, the distributor breached that obligation. *Id.* For over one year, the producer did not object to the distributor's sales activities. *Id.* at 642. Because the producer knew about the distributor's sales activities, but chose not to object, the producer waived the contract provision prohibiting the distributor from selling its competitor's products. *Id.* at 648. This sales-limitation provision was waived even though the contract required that any approval of selling products created by the producer's competitors must be in writing. *Id.* at 641.

The contract between Mobilelink and PNK included an assignment of four leases in the middle of the month. PNK, which was in the stores at the beginning of

the month, agreed to pay the rent that month. But Mobilelink knew that PNK did not pay the October rents and, according to Rouf, orally "agreed" to pay the October rents. There is no evidence that Mobilelink objected to paying the rent or demanded that PNK reimburse it for the October rents. Nor did Mobilelink complain of PNK's failure to pay the October rents in its counterclaim.

Thus, Mobilelink's actions indicating that it assumed the responsibility of paying the October rents—and its silence on PNK's failure to pay those rents—constitute some evidence "show[ing] an intention" to abandon this contract provision. *Johnson*, 148 S.W.3d at 722. Mobilelink argues that the contract provided that any changes to the contract must be in writing. But such a provision does not insulate a party from waiving a contractual provision by its actions or silence. *See Blackstone*, 470 S.W.3d at 641, 648. We must imply findings by the trial court consistent with the judgment and supported by the evidence. *Holt Atherton Indus.*, 835 S.W.2d at 83; *Roberson,* 768 S.W.2d at 281; *Gainous,* 219 S.W.3d at 103. Because some evidence supports an implied finding that Mobilelink waived PNK's obligations with respect to October rent payments, we overrule Mobilelink's first issue.

### Damages

The trial court awarded PNK $73,623 in damages, without specifying how it calculated those damages. Mobilelink argues that legally and factually insufficient

evidence exists to support an award of damages for amounts due but unpaid under the leases. And, according to Mobilelink, any evidence of damages that PNK presented was conjectural and speculative.

## A. Standard of review

"In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict." *New York Party Shuttles*, 414 S.W.3d at 211. When both the legal and factual sufficiency of the evidence are challenged, "we first review the legal sufficiency of the evidence to determine whether the record contains any evidence of probative value to support the factfinder's decision." *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.— Houston [14th Dist.] 2010, no pet.). If a party attacks the legal sufficiency of the evidence, it must show no evidence exists to support the adverse finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

If the evidence is legally sufficient, we then examine the factual sufficiency of the evidence. *See Kellmann*, 332 S.W.3d at 684. In conducting a factual-sufficiency review, we "consider and weigh all of the evidence supporting and contradicting the challenged finding and set the finding aside only if the evidence is so contrary to the overwhelming weight of the evidence as to make the finding

12

clearly wrong and manifestly unjust." *McMahon v. Zimmerman*, 433 S.W.3d 680, 691 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)).

## B.     Damages award

PNK presented evidence of several different types of damages it sustained because of Mobilelink's breach. First, Rouf testified that Mobilelink did not pay the remaining $45,000 from the original purchase contract. Neither party contends that the evidence was legally or factually insufficient to support this award of damages.

Second, Rouf testified that Mobilelink did not return PNK's security deposits at the end of the lease term, as required under the contract. PNK presented both Rouf's testimony and the lease stating that the security deposit on the 2144 Austin location was $1,010.

Third, PNK presented a June 2014 invoice from the landlord of the Babcock store stating that PNK owed it $19,048.73 in past due rent. Rouf also testified that, although the landlord delivered the assignment for the Babcock location to Mobilelink, Mobilelink never signed the separate document assuming that lease, as it agreed to do under the contract.

Additionally, PNK presented evidence that it faced additional liability in the Babcock store after the June invoice. Rouf testified that the Babcock landlord did

not rent that location to another tenant until January 2015—another six months after the June 2014 invoice. The trial court could have reasonably inferred that PNK incurred rent liability of $1,586.20 per month during those six months, totaling another $9,518.40. *See Graham Cent. Station v. Peña*, 442 S.W.3d 261, 264 (Tex. 2014) (holding that factfinder can make reasonable inferences from testimony).

Mobilelink argues that we cannot consider the 2014 invoice or the rent damages after that invoice because PNK did not present any evidence "that it had ever paid any of these amounts to the landlord, or that the landlord had in fact instituted suit or any other collection activity against" it. Thus, according to Mobilelink, this evidence is speculative and contingent on any action the landlord "*might* eventually take to collect upon the rentals and other charges."

But invoices can be evidence of the amount of damages a party suffered. *See Bhamani v. Citizens Enters.*, No. 11-13-00041-CV, 2015 WL 1779055, at *6 (Tex. App.—Eastland Apr. 16, 2015, no pet.) (mem. op.) (landlord's rent demands and invoices sufficient evidence to support jury award); *Sanders Oil & Gas GP v. Ridgeway Elec.*, 479 S.W.3d 293, 304–05 (Tex. App.—El Paso 2015, no pet.) (same). And a lease itself provides some evidence from which the factfinder can determine the amount of rent due without speculation. *See Dupree v. Boniuk Interests, Ltd.*, 472 S.W.3d 355, 365 (Tex. App.—Houston [1st Dist.] 2015, no

14

pet.); *Cunningham v. Anglin*, No. 05-13-01166-CV, 2015 WL 1324631, at *3 (Tex. App.—Dallas Jan. 30, 2015, pet. denied) (mem. op.); *see also Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 65 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (leases showing rental amounts due are evidence of lost profits due to unpaid rents, without requiring speculation). Similarly, the invoice the landlord sent PNK and the lease that PNK introduced into evidence are legally and factually sufficient evidence to support the trial court's damages award.

These four categories of damages total more than the $73,623 that the trial court awarded PNK. Thus, legally and factually sufficient evidence exists to support the trial court's damages award.

## Judgment Did Not Conform to Written Pleadings

Mobilelink next argues that the judgment did not conform to the pleadings because the pleadings listed "P&K Wireless Communication, Inc." as the plaintiff but the judgment awarded damages to "PNK Wireless Communications." PNK responds that the trial court allowed it to orally amend its pleadings at trial and that Mobilelink did not object to this oral amendment, and, thus, did not preserve this issue for appeal.

"A court may allow an amendment in the pleadings at trial and shall do so freely when the [amendment] will serve the merits of the moving party if the objecting party fails to satisfy the court that the amendment would cause

15

prejudice." *In re Marriage of Loftis*, 40 S.W.3d 160, 163 (Tex. App.—Texarkana 2001, no pet.). The trial court has "no discretion" and must allow a party to amend its pleadings at trial unless (1) "the opposing party presents evidence of surprise or prejudice" or (2) "the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Greenhalgh v. Serv. Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *see Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 186 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *In re Marriage of Loftis*, 40 S.W.3d at 164. Although "an oral statement at trial is insufficient to modify the pleadings," a "party waives its complaint of any defect, omission, or fault in the pleadings if the party fails to specifically object before the submission of the charge to the jury." *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 73 (Tex. 2000); *see Kreighbaum v. Lester*, No. 05-06-01333-CV, 2007 WL 1829729, at *3 (Tex. App.—Dallas 2007, no pet.) (mem. op.) ("[A] party waives its complaint of the pleading's failure to be in writing by failing to object to this defect in the pleading.").

At trial, PNK moved to amend its pleadings to change the name of the plaintiff from "P&K Wireless" to the correct name of the entity, "PNK Wireless." Mobilelink did not object to the substance of PNK's oral trial amendment or object to PNK's trial amendment not being in writing. Nor did Mobilelink present any evidence that this change caused it surprise or prejudice. In fact, Mobilelink

16

expressly stated that it had no objection to the amendment. The trial court, therefore, did not err in granting PNK's motion to amend its pleadings. Because the judgment matched PNK's pleadings as amended, there is no discrepancy requiring reversal. Accordingly, we overrule Mobilelink's third issue.

## Attorney's Fees

Mobilelink argues that the trial court erred in awarding PNK attorney's fees because "[t]here is no evidence in the record of the hourly rate charged by [PNK's] attorney, or the number of hours he expended in prosecuting the case, or any of the . . . factors" listed in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997). It concludes that, without any of this evidence, the trial court "did not have sufficient information upon which to predicate its award of attorney's fees and, thus abused its discretion in awarding any amount of attorney's fees to" PNK. PNK responds by arguing that Mobilelink did not preserve this issue for review on appeal.

Generally, a party must present its complaint to the trial court with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a). And generally, "[c]omplaints regarding alleged error in awarding attorney's fees are subject to this rule." *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.). But after a bench trial, "a party may

17

raise a complaint regarding the sufficiency of the evidence to support attorney's fees for the first time on appeal." *Id.*

A trial court, in an action under Section 38.001 of the Civil Practice and Remedies Code, "may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence . . . ." TEX. CIV. PRAC. & REM. CODE § 38.004. Such "usual and customary attorney's fees" are presumed to be reasonable. *Id.* § 38.003. A trial court's judicial notice of the usual and customary attorney's fees constitutes some evidence on which the trial court can base its award. *See Nguyen v. Bui*, No. 01-14-00239-CV, 2015 WL 1825658, at *3 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no pet.) (mem. op.); *Kendrick v. Seibert*, 439 S.W.3d 408, 411–12 (Tex. App.—Houston [1st Dist.] 2014, no pet.). And "[t]rial judges can draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees." *McMahon*, 433 S.W.3d at 693 (quoting *Protect Envtl. Servs. v. Norco Corp.*, 403 S.W.3d 532, 543 (Tex. App.—El Paso 2013, pet. denied)). Accordingly, the trial court is not required to hear evidence on the *Arthur Andersen* factors. *Nguyen*, 2015 WL 1825658, at *3; *Kendrick*, 439 S.W.3d at 411–12.

Mobilelink relies on *Long v. Griffin*, 442 S.W.3d 253 (Tex. 2014) and *City of Laredo v. Montano*, 414 S.W.3d 731 (Tex. 2013), for the principle that PNK

18

was required to adduce "evidence of the time spent on specific tasks." Unlike *Long* and *Montano*, the issues in this case were not complex. The bench trial lasted half of a day with three witnesses. In *Long*, the plaintiff sought $100,000 in fees; in *Montano*, the plaintiff sought more than $400,000 in fees and adduced evidence that the lead attorney worked 1,356 hours on the case, amounting to a fee of $339,000. *Long*, 442 S.W.3d at 254; *Montano*, 414 S.W.3d at 733–34. Both *Long* and *Montano*, however, addressed situations in which the party recovering attorney's fees elected to prove up those fees using the lodestar method. *Long*, 442 S.W.3d at 253, 255; *Montano*, 414 S.W.3d at 736. Because that method "require[s] consideration of the time spent [by the attorney], the reasonable value of that time, and whether the time was reasonable and necessary," calculations under that method necessarily require evidence of how an attorney spent his or her time. *Montano*, 414 S.W.3d at 735. Like the statute at issue in *Montano*, however, Section 38.001 "does not require that attorney's fees be determined under a lodestar method." *See id.* at 736. PNK did not elect to present any evidence based on a lodestar calculation but instead left the issue to the trial court's determination based on the trial court's experience and knowledge. Thus, *Long* and *Montano* are inapplicable.

PNK presented to the trial court its owner's statement that he was "asking the Court to award . . . $8,450 in attorney fees." As Mobilelink acknowledges, by

19

awarding attorney's fees in a bench trial, the trial court took judicial notice that the fees awarded were reasonable, and that notice itself constitutes some evidence supporting an award of fees. *See Nguyen*, 2015 WL 1825658, at *3; *Kendrick*, 439 S.W.3d at 411–12. Because some evidence exists to support the trial court's award of attorney's fees, we overrule Mobilelink's fourth issue.

## Conclusion

We affirm the trial court's judgment.


Harvey Brown
Justice

Panel consists of Justices Massengale, Brown, and Huddle.